[No. D054976. Fourth Dist., Div. One. Nov. 4, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTIN FELIPE MIRAMONTES, Defendant and Appellant.

## COUNSEL

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HUFFMAN, Acting P. J.**—A jury convicted Martin Felipe Miramontes of one count of sodomy with a child 10 years old or younger (Pen. Code,[1] § 288.7, subd. (a)), four counts of oral copulation/sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b)), and four counts of committing a lewd act on a child (§ 288, subd. (a); plus an attempt count of the latter). Additionally, Miramontes was convicted of four counts of using harmful matter to seduce a child (§ 288.2, subd. (a)), and one count of possession of child pornography (§ 311.11, subd. (a)).

The jury found true further allegations as to nine of the counts that there were multiple victims (§ 1203.066, subd. (a)(7)). Likewise, as to four of the counts, the jury found true the allegations that Miramontes had committed an offense described in section 667.61, subdivision (c) against more than one victim (§ 667.61, subds. (b), (c) & (e)). Next, regarding eight of the counts, the jury found it was true that Miramontes had engaged in substantial sexual conduct with a child under the age of 14 (§ 1203.066, subd. (a)(8)). Regarding seven of the counts, the jury found it was true that Miramontes had used harmful matter depicting sexual conduct (child pornography; § 1203.066, subd. (a)(9)).

The court sentenced Miramontes to a total prison term of 146 years to life, with a 25-year-to-life term imposed for the sodomy count, and 15-year-to-life terms for eight of the other counts, plus a one-year term for one conviction of a lewd act upon a child. (§ 288, subd. (a).) Additionally, concurrent terms were ordered for five other counts. (§ 288.2, subd. (a), harmful matter; § 311.11, subd. (a), child pornography.)

Miramontes appeals, contending the trial court prejudicially abused its discretion in admitting evidence of uncharged sexual offenses under Evidence Code section 1108, over his Evidence Code 352 objections (about his 2003 lewd acts upon two children in Mexico). Along with this assertion, Miramontes claims Evidence Code section 1108 violates his federal due process rights by permitting the use of propensity evidence to convict. (But see *People v. Falsetta* (1999) 21 Cal.4th 903, 922 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*).) Finally, Miramontes claims the use of CALCRIM No. 1191, regarding the uncharged offenses, denied him his federal rights to due process and a fair trial. (But see *People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1016 [130 Cal.Rptr.2d 254, 62 P.3d 601] (*Reliford*).)

On this record, we determine the trial court did not abuse its discretion when it admitted evidence of the uncharged sexual offenses under Evidence

---

[1] All statutory references are to the Penal Code unless otherwise specified.

Code section 1108, over Miramontes's objections made under Evidence Code section 352. Moreover, there is no basis for this court to reverse the judgment for any statutory or due process violations involving that testimony or the jury instructions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Background*

Miramontes does not challenge the sufficiency of the evidence to support his various convictions, and we may therefore set out the facts regarding those offenses in a summary fashion, for the purpose of evaluating his evidentiary error claims about similar uncharged conduct. In doing so, we refer to the young victims of the 2007 sexual misconduct as L. (Eduardo L.), D. (Eduardo D.) and M. (Javier M.). Likewise, as to the 2003 uncharged molestation incidents in Mexico, we refer to the young victims as B. (B.B.) and A. (Alex L.).

### B. *The Prosecution Case: Three Victims*

Basically, the evidence showed that in 2007, Defendant was in his 40's, and was living in San Diego in an apartment complex near the residences of the three young male victims, L. (age seven), D. (age 12), and M. (age 11). In 2003, Miramontes was living in Mexico in a neighborhood near B. (then age seven) and her male cousin A. (also age seven). He "befriended" all of these youngsters and inappropriately touched and communicated with them in various ways, as will next be described.

### 1. *Counts 1 to 9, L.*

In the fall of 2007, Miramontes was living in San Diego with his parents and a disabled sister. L. was seven years old and lived in the same apartment complex. L. testified at trial that Miramontes often invited him to his bedroom and showed him pornographic movies with boys and adults, told him that was good behavior, and then had him take off his clothes and touched him all over his body. Sometimes D. or M. was also there and participated in such conduct. Miramontes kissed L.'s neck, penis and anus, and asked L. to suck or kiss his penis. Miramontes kept a plastic penis in the closet that he asked L. to kiss. Miramontes put the plastic penis into his own anus, and also into L.'s anus and M.'s anus.

Miramontes gave L. a dollar and promised him a CD (compact disc) and a PlayStation if L. would suck his penis, but he gave L. only the CD. Miramontes showed L. how he would shower his own disabled sister and put

his finger into her anus. The last day they were together, Miramontes placed his finger and penis into L.'s anus. That night, L.'s mother was giving him a bath and noticed a bruise on his thigh and bleeding from his anus. She discovered he was in pain and could not walk, and reported the incidents to police the next day, November 5, 2007.

At first, L. told police and the interviewing social worker from the Health and Human Services Agency (the Agency) that he knew what bad touching was and no one had done anything like that to him. A forensic medical examination November 9, 2007, disclosed that L. had a deep tear in his anus that had healed over time, consistent with an injury, rather than any natural causes. L.'s mother reported L. had recently been having heart palpitations, bed-wetting and severe bowel control problems.

2. *Counts 10 to 12, D.*

D. was 12 years old in the fall of 2007, and lived in the same apartment complex as did Miramontes and L. When they were together, Miramontes talked to L. and D. about sex and how it was good for boys to have sex together, and he showed them pornographic movies. Miramontes squeezed the penis of D., and another time, put his hands down his own pants and then wiped a wet, sticky substance on D.'s cheek. Miramontes told the two boys that he would kill their mothers if they told anyone. D. and his mother also went to the police station to report Miramontes's activities.

3. *Counts 13 and 14, M., and count 16, all three youths*

M. was 11 years old in 2007 and lived near the apartments where Miramontes lived. When M. was playing with L. and D., Miramontes sometimes approached them and showed them child pornography involving boys. Miramontes offered the boys money to engage in sex acts with each other or with him, while he watched, and he told M. that he liked to rape little kids.

One time, M. saw Miramontes touching another boy's penis and buttocks, and then Miramontes grabbed M.'s penis and touched his stomach area. Miramontes told the boys that if they told anyone about these activities, Miramontes would kill their mothers. Sometime later, M. learned that L. and his mother had told the police about Miramontes's activities.

Investigators obtained a search warrant for Miramontes's room and found some of the items that had been described by the three victims, including toys, the plastic penis, thong underwear, computer photographs and videos of boys involved in sexual acts, a camera and cell phone, and photographic

prints of boys involved in sexual acts. Investigators reviewed Miramontes's computer chat logs and found sexual materials and sexual references to Miramontes's sister.

L., D. and M. each testified at trial, explaining they knew the difference between the truth and a lie, and describing the above incidents that involved them.

### C. *In Limine Proceedings on Admissibility of Prior Uncharged Sexual Misconduct Incidents*

Before the jury was selected, both parties brought motions in limine regarding the intent of the prosecutor to introduce testimony about prior uncharged sexual offenses against children, specifically two children, B. and A., who previously lived near Miramontes in Mexico. (Evid. Code, §§ 1101, 1108.) Miramontes opposed the prosecutor's motion to introduce such testimony, arguing it was too prejudicial, inflammatory, or confusing, and would be cumulative and unnecessary, since the current three victims were going to testify. Also, Miramontes claimed in his own motion that federal due process violations were inherent in the use of criminal propensity evidence.

At the hearing on the motions, the court agreed with the prosecutor that under Evidence Code section 1108, the prior acts could legitimately be used for propensity evidence, as guided by the instructions. The court explained its ruling as follows: Under Evidence Code section 1101, subdivision (b), the evidence would be appropriate for the jury to consider as to intent or common plan. Evidence Code section 1108 further provided for the admission of propensity evidence, if it were not unduly inflammatory or remote in time. The court found that adding those two witnesses would not create an unduly lengthy proceeding, and under California Supreme Court cases, Evidence Code section 1108 did not violate federal due process guarantees. The defense objections under Evidence Code section 352 (on both state and federal due process grounds) were overruled.

At the time of trial B. was 13 years old. In her testimony, she explained that when she was four to six years of age, she regularly went to the Tijuana house of Miramontes's mother, her babysitter, when Miramontes also lived there. Miramontes alone babysat her for about a week at one point. Beginning when she was about four years old, Miramontes sometimes took her into his bedroom and asked her to suck on his penis, and he would kiss and touch her breasts, buttocks, and vagina. At times, he would also bring her cousin A. into the bedroom, make them both undress, and have B. perform sexual acts on A. and on Miramontes, sometimes videotaping them.

Miramontes sometimes masturbated in front of B., and he sometimes required her to perform sex acts on one of Miramontes's visiting teenage male acquaintances, who had also appeared in Miramontes's pornographic movies shown to her. Miramontes told her that if she told anyone about these activities, something bad would happen to her mother. These acts stopped in 2003, when she was six or seven years old, when her cousin, A., told B.'s mother about what was happening at Miramontes's house, and B. then disclosed those facts to her. Tijuana police were called and investigated, and medical examinations were conducted of the children, but apparently no charges were filed. About that time in 2003, Miramontes and his family moved to San Diego.

After B.'s testimony, the court gave a limiting instruction under CALCRIM No. 1191 regarding the uncharged crime of Miramontes committing a lewd act upon a child. The court explained to the jury at that time that the evidence of uncharged offenses was admitted for a limited purpose, to decide whether or not Miramontes was the person who committed the offenses in this case, with the required intent or plan. The court repeated the same instruction when A. began his testimony, and again after the parties rested.[2]

A. testified that when he and B. were both around seven, he would sometimes go into Miramontes's bedroom when B. was also there. Miramontes touched both B. and A. all over their bodies while they were unclothed, and he videotaped his and their sexual acts. Miramontes kissed A.'s penis and placed his own penis into A.'s rectum until white stuff came out. In return, Miramontes gave A. 20 pesos.

Dr. Davis, who had examined L., also examined records of forensic medical examinations of B. and A., conducted after their 2003 reporting of those incidents. B.'s examination was normal, and A.'s examination showed

---

[2] CALCRIM No. 1191 provides: "The People presented evidence that the defendant committed the crimes of a lewd act upon a child that were not charged in this case. These crimes are defined for you these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offenses. . . . [¶] . . . [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required, to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit sodomy [and oral copulation and sexual penetration] of a child under 10, and lewd acts upon a child as charged here. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of [the same above offenses and] lewd acts upon a child. The People must still prove each element of the charge and allegation beyond a reasonable doubt." Additionally, the court gave CALCRIM No. 375, regarding evidence of uncharged offenses to prove identity, intent, common plan, etc., which included the following language: "Do not consider this evidence for any other purpose."

mainly normal results, but also some evidence of abrasions on his right leg and a laceration near his anus, which was characterized as "paragenital violence."

### D. *The Defense Case*

Miramontes did not testify in his defense at trial. He called as a witness the police officer who had initially interviewed L. At that time, L. denied to police that any bad touching had occurred. Similarly, the Agency's social worker was originally told by L. that there had not been any bad touching in his life.

Likewise, when M. was initially interviewed, he denied that Miramontes had ever touched him. Miramontes's counsel argued that one or more of the mothers of the boys must have made up these stories, or that L.'s anal injuries must have been caused by passing hard stools, which explanation had not been ruled out by the medical examination.

Miramontes called several family members as witnesses (his mother and two aunts), who each testified about never seeing him act inappropriately around children. His mother testified that she, not Miramontes, was the care provider for his disabled sister (and earlier for B.), and that Miramontes was always too busy at work to have engaged in the activities of which he was accused. She said she did not allow A., who she said was dirty and a "street kid," into her house in Mexico.

According to the testimony of Miramontes's father, the family moved to San Diego in 2003 because of his own health. In 2007, he was at the apartment building one day and saw that a young boy (either L. or D.) was orally copulating another boy, so he reported this to their mothers.

Miramontes called two character witnesses, a work acquaintance and a social acquaintance, who also testified they had never seen him act inappropriately around children.

### E. *Verdict; Judgment*

During closing argument, the prosecutor told the jury that the evidence about the uncharged previous sexual offenses with B. and A. could be used to show Miramontes's propensity and specific intent to commit the current alleged crimes, including lewd conduct upon a child under the age of 10. (CALCRIM No. 1191.) In the same way, she also referred to the previous use of harmful material (pornography) with A. and B., as showing a propensity to commit such acts on the current victims.

In defense counsel's closing, she pointed out that even if Miramontes had downloaded and viewed child pornography on his computer, that did not mean that he had actually engaged in similar acts against the children who testified in court. She then argued that their stories had evolved over time, and pointed out they delayed in their initial reporting of the offenses.

With respect to the testimony of the two children from Mexico, defense counsel suggested that their stories were implausible, such as where B. said that Miramontes had babysat her for a week in 2003 while his parents were on vacation, and some sex acts happened at that time. Also, the apartment in Tijuana had a layout that would not have allowed much secrecy in comings and goings. The physical examinations of the Mexican children had not shown clear signs of physical or sexual abuse. In rebuttal, the prosecutor mentioned the testimony of the two Mexican children, and argued their stories were not merely coincidental. The case was submitted.

In jury instructions, the court read, among others, CALCRIM No. 1191, regarding the evidence of Miramontes allegedly engaging in sexual conduct with the two Mexican children, although that was not charged in this case.

During deliberations, the jury sent out a number of questions to the judge, including one about the further allegations of count 1 and which multiple victims were being referenced, i.e., whether that paragraph only referred to the current victims, "or does this include A./B. (uncharged?) Or anyone we don't know about?" The court answered that the multiple victim language referred only to the charged victims, L., D., and M.

As summarized above, the jury returned verdicts finding Miramontes guilty, specifically as to L.: One count of sodomy; four counts of oral copulation/sexual penetration; two counts of lewd acts (hand/penis contacts); and two counts of using harmful material to seduce a minor.

As to D. in particular, the jury verdicts found Miramontes guilty of two counts of lewd acts on a child (hand/crotch contact; finger/cheek contact), and one count of using harmful material to seduce a minor.

As to M., the jury verdict found Miramontes guilty of one count of attempted lewd acts (display of penis) and one count of using harmful material to seduce a minor.[3]

---

[3] The jury hung on one count of lewd act upon a child (M., count 15), and it was subsequently dismissed at the request of the prosecution. Also, certain further allegations regarding the attempted lewd acts on M. (count 13), were dismissed after the verdict, although the others remained in effect.

Additionally, the jury convicted Miramontes of possession of child pornography (§ 311.11, subd. (a)), and found true the further allegations of multiple victims (§§ 667.61, subd. (b), 1203.066, subd. (a)(7)); substantial sexual conduct with a child (§ 1203.066, subd. (a)(8)); and use of harmful sexual matter (§ 1203.066, subd. (a)(9)). Miramontes timely appealed.

## DISCUSSION

Miramontes's challenges to the judgment are based on the trial court's ruling in limine that allowed into evidence the prior uncharged acts of molestation of B. and A. (Evid. Code, §§ 1101, subd. (b), 1108.) We first address his claims of evidentiary error, then his due process arguments.

## I

### *EVIDENTIARY ARGUMENTS*

#### A. Pertinent Law

 Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type, and essentially allowing such evidence to be used in determining whether the defendant is guilty of the current sexual offense charge. (Evid. Code, § 1108, subd. (a).) Before Evidence Code section 1108 was enacted, prior bad acts were inadmissible when their sole relevance was to prove a defendant's propensity to engage in criminal conduct (see Evid. Code, § 1101;[4] *Falsetta, supra*, 21 Cal.4th 903, 911, 913). However, the enactment of Evidence Code section 1108 created a statutory exception to the rule against the use of propensity evidence, allowing admission of evidence of other sexual offenses in cases charging such conduct, for proof of the defendant's disposition to commit the charged offense. (*Falsetta, supra*, at

---

[4] Evidence Code section 1101 provides in relevant part: "(a) Except as provided in this section and in Section[] . . . 1108 . . . , evidence of a person's character or a trait of his or her character (whether in the form of an opinion . . . or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

To be relevant on the issue of intent, uncharged crimes need only be sufficiently similar to a charged offense to support the inference that the defendant probably harbored the same intent in each instance. (*People v. Kipp* (1998) 18 Cal.4th 349, 371 [75 Cal.Rptr.2d 716, 956 P.2d 1169] (*Kipp*).)

p. 911.) The California Supreme Court has ruled that Evidence Code section 1108 is constitutional. (*Falsetta, supra*, at pp. 916–922.)

■ However, because Evidence Code section 1108 conditions the introduction of uncharged sexual misconduct or offense evidence upon whether it is admissible under Evidence Code section 352,[5] any valid objection to such evidence, as well as any derivative due process claim, necessarily depends on whether the trial court sufficiently and properly evaluated the proffered evidence under that section. "A careful weighing of prejudice against probative value under [Evidence Code] section 352 is essential to protect a defendant's due process right to a fundamentally fair trial." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314 [97 Cal.Rptr.2d 727] (*Jennings*).) As our Supreme Court stated in *Falsetta*, in evaluating such Evidence Code section 1108 evidence under Evidence Code section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other . . . offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra*, 21 Cal.4th at p. 917.) In evaluating such evidence, the court must determine "whether '[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses.' " (*People v. Harris* (1998) 60 Cal.App.4th 727, 738 [70 Cal.Rptr.2d 689].)

On appeal, we review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion. (*Kipp, supra*, 18 Cal.4th at p. 371.) The determination as to whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is "entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." (*People v. Fitch* (1997) 55 Cal.App.4th 172, 183 [63 Cal.Rptr.2d 753].)

■ The weighing process under Evidence Code section 352 "depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules."

---

[5] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

(*Jennings, supra*, 81 Cal.App.4th at p. 1314.) " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 320 [75 Cal.Rptr.2d 412, 956 P.2d 374].) We will not find that a court abuses its discretion in admitting such other sexual acts evidence unless its ruling " 'falls outside the bounds of reason.' [Citation.]" (*Kipp, supra*, 18 Cal.4th at p. 371.) We will only disturb a trial court's ruling under Evidence Code section 352 where the court has exercised its discretion in a manner that has resulted in a miscarriage of justice. (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42 [107 Cal.Rptr.2d 100] (*Frazier*).)

## B. Issues on Appeal

Miramontes contends it was error and an abuse of discretion to allow into evidence his prior uncharged acts against B. and A. Here, as in the trial court, he contends this evidence does not satisfy the criteria for admissibility under Evidence Code section 1108 or 1101, because it lacked probative value (too remote in time, too dissimilar, and too weak), and was cumulative and unnecessary, because the current three victims were testifying. He also contends the evidence was unduly prejudicial, because it was confusing and inflammatory. (Evid. Code, § 352.) (Also, Miramontes claimed in his own motion in limine that federal due process violations were inherent in the use of criminal propensity evidence; see pt. II, *post*.)

We first take note that on appeal, Miramontes has also developed a new theory to challenge this evidence, that as a matter of statutory construction, the Mexican offenses fail to qualify as the kind of sex offenses enumerated in the statute (Evid. Code, § 1108, subd. (d)(1)(A)–(F)).[6] Miramontes asserts that only conduct that is expressly prohibited by state or federal law, not foreign law, should be admissible under Evidence Code section 1108, subdivision (a), because the definitions in Evidence Code section 1108,

---

[6] Evidence Code section 1108, subdivision (d)(1) and (2) supply definitions to flesh out the "sexual offense" terminology used in this section, regarding admissibility in a prosecution of other sexual misconduct instances: "(1) 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following: [¶] (A) Any conduct proscribed by [enumerated sections of] the Penal Code. [¶] (B) Any conduct proscribed by Section 220 of the Penal Code [generally, sexual assault]. [¶] (C) Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person. [¶] (D) Contact, without consent, between the genitals or anus of the defendant and any part of another person's body. [¶] . . . [¶] (F) An attempt or conspiracy to engage in conduct described in this paragraph. [¶] (2) 'Consent' shall have the same meaning as provided in Section 261.6 of the Penal Code, except that it does not include consent which is legally ineffective because of the age, mental disorder, or developmental or physical disability of the victim."

subdivision (d)(1) refer to local laws, e.g., "(1) 'Sexual offense' *means a crime under the law of a state or of the United States* that involved any of the following: [¶] (A) Any conduct proscribed by [listing various sex offense prohibitions in the Penal Code, including section 220 (sexual assault)]." (Italics added.) The definitions in Evidence Code section 1108, subdivision (d)(1) continue with more general prohibitions, such as sexual offenses consisting of "(C) Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person. [¶] (D) Contact, without consent, between the genitals or anus of the defendant and any part of another person's body."

█ Under Evidence Code section 1108, subdivision (d)(1)(A) through (F), the prior and charged offenses are considered sufficiently similar, for admissibility in this manner, if they are both the type of sexual offenses enumerated there. (*Frazier, supra*, 89 Cal.App.4th 30, 40–41.) A jury may consider such prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type, as an exception to the rule against the use of propensity evidence. (*Falsetta, supra*, 21 Cal.4th 903, 911–913.)

Miramontes, however, argues that a strict reading of Evidence Code section 1108, subdivision (a) would not allow such use of any uncharged foreign offenses, because subdivision (d) of that section does not expressly list them. There are several problems with this argument. First, it was not raised before the trial court, and should therefore be considered to be forfeited. (*People v. Seijas* (2005) 36 Cal.4th 291, 302 [30 Cal.Rptr.3d 493, 114 P.3d 742].)

█ Next, even if this argument is considered, it makes no sense, because the intended scope of Evidence Code section 1108 is broad enough to encompass admissibility of the testimony of B. and A., which clearly describes conduct that is prohibited by California law, even though it did not take place in California. Nowhere in Evidence Code section 1108 is it required that the referenced other sexual offenses have taken place in the United States, and instead, the definitions in its subdivision (d) include descriptions of the substance of unlawful conduct involved in a prior offense, wherever it may have occurred. The principal consideration in this inquiry is whether the comparable prior, essentially similar, conduct occurred, not where it occurred, for purposes of determining if California consequences will ensue, such as its admissibility under Evidence Code section 1108.

By way of analogy, we believe this evidentiary rule should, as a policy matter, be interpreted in a comparable way to the rules allowing use of a prior out-of-state conviction for enhancement of punishment. (§ 667.) Under *People v. Myers* (1993) 5 Cal.4th 1193 [22 Cal.Rptr.2d 911, 858 P.2d 301]

(*Myers*), and *People v. Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150] (*Guerrero*), the entire record may be examined to establish the substance of the offense that was actually committed, for prior serious felony enhancement purposes. (*People v. McMahan* (1992) 3 Cal.App.4th 740, 745 [4 Cal.Rptr.2d 708], interpreting § 667; see 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 373, pp. 493–494.) Under *Myers*, the following rule applies to such sentence enhancements: "[T]he trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted *involved conduct which satisfies all of the elements of the comparable* California serious felony offense." (*Myers, supra*, 5 Cal.4th at p. 1195, italics added; see 3 Witkin & Epstein, Cal. Criminal Law, *supra*, Punishment, § 373, pp. 493–494.)

Another instructive comparison is found in the recent case of *In re Rodden* (2010) 186 Cal.App.4th 24, 36 [111 Cal.Rptr.3d 517], dealing with whether the sex offender registration statute, section 290.005, requires a person to register as a sex offender if he or she has suffered an out-of-state sex offense conviction that includes all of the least adjudicated elements of a registerable offense in California. The court had to interpret the requirements of that section and its express exceptions, in particular, section 290.005, subdivision (d), stating " 'a person convicted in another state of an offense similar to [enumerated] offenses who is required to register in the state of conviction shall not be required to register in California unless the out-of-state offense contains all of the elements of a registerable California offense described in subdivision (c) of Section 290 . . . .' " (*In re Rodden, supra*, at p. 34.) In broad summary, the court held in that case "that section 290.005 requires the least adjudicated elements of the out-of-state conviction to meet all of the statutory requirements of a registerable offense in California." (*In re Rodden, supra*, at p. 36.) In reaching its conclusions, the court in *Rodden* relied on statutory construction rules and also on the logic of *Myers, supra*, 5 Cal.4th at page 1201, and *Guerrero, supra*, 44 Cal.3d 343 at page 355. (*In re Rodden, supra*, 186 Cal.App.4th 24, 38–39 [i.e., considering whether the pertinent legislation allows the trier of fact to look to the entire record of a conviction, to promote the efficient administration of justice, in allowing an enhancement that refers to conduct].)

■ In determining the admissibility of prior uncharged acts, this pertinent legislation, Evidence Code section 1108, permits a court to consider the substance of certain prior sexual misconduct that was actually committed elsewhere, if such conduct would amount to a "crime under the law" of a jurisdiction that proscribes certain identified types of sexual misconduct, such

as California. (Evid. Code, § 1108, subd. (d)(1).)[7] Statutory construction rules require us to ascertain the Legislature's intent in order to effectuate the law's purpose. (*In re Rodden, supra,* 186 Cal.App.4th 24, 31–32.) In light of the well-known purpose of this evidentiary statute, we believe the nature of the acts involved in the prior uncharged offenses or incidents of misconduct, even if they occurred elsewhere, may be considered in determining their admissibility under Evidence Code section 1108, because the legislative intent "in sex offense cases [was] to relax the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta, supra,* 21 Cal.4th 903, 911.)

■ Assuming that the requirements of Evidence Code section 352 can be satisfied, there is no reason as a matter of law, logic or statutory construction to withhold reliable evidence of such foreign prior uncharged misconduct from a jury, where, as here, the offer of proof showed that those prior incidents "*involved conduct which satisfies all of the elements of the comparable* California [sex] offense." (See *Myers, supra,* 5 Cal.4th at p. 1195, italics added; see 3 Witkin & Epstein, Cal. Criminal Law, *supra,* Punishment, § 373, pp. 493–494.)[8]

Because of the evident policies behind Evidence Code section 1108, we see no reason to read too narrowly its language (that "evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352"). If Evidence Code section 352 requirements are satisfied, evidence of an uncharged sexual offense or incident of misconduct that substantially consisted of the conduct defined in Evidence Code section 1108, subdivision (d)(1)(A) through (F), but that was committed elsewhere, may properly be considered by the jury under Evidence Code section 1108, subdivision (a). Miramontes has no legitimate basis to claim otherwise.

---

[7] Moreover, since Evidence Code section 1108, subdivision (d)(2) defines "consent" with reference to the Penal Code, and excludes consent "which is legally ineffective because of the age . . . of the victim," it is evidently concerned with harmonizing different statutory schemes that have the same purpose, such as protecting children from sex offenses.

[8] In this context, we need not rely on any rule of lenity, as it applies to penal statutes; such a rule is inapplicable to Evidence Code section 1108, a rule of evidence not defining crimes or punishments. (*People v. Story* (2009) 45 Cal.4th 1282, 1294 [91 Cal.Rptr.3d 709, 204 P.3d 306].)

### C. Analysis of Issues Properly Presented

Returning to Miramontes's cognizable issues on appeal, he contends the trial court misapplied the criteria for admissibility under Evidence Code section 1108 or 1101. We look to whether the court prejudicially abused its discretion under Evidence Code section 352 by admitting such evidence, such as if it were more prejudicial than probative, due to any high likelihood of juror confusion from remoteness in time, weak probative value, or cumulative nature. (*People v. Fitch, supra,* 55 Cal.App.4th 172, 183.)

In this case, the trial court had a substantial basis to find the evidence from B. and A. was admissible under Evidence Code section 1101, subdivision (b), on the issues of Miramontes's intent and common scheme or plan. The prosecution had a legitimate need to introduce such evidence, because Miramontes was pleading not guilty and was claiming that the victims in the current offenses were not credible and they or their mothers were making up the charges. It was therefore important to bolster the credibility of the current victims by bringing in evidence from Miramontes's prior child acquaintances, who had undergone similar treatment at his hands. In each case, he was much older than the child victims, performed similar acts on them, showed them pornography, had them interact sexually while he watched, offered them money, and/or threatened their families. That evidence supports the common design or plan theory for admissibility under Evidence Code section 1101.

Likewise, under Evidence Code section 1108, Miramontes cannot show an abuse of discretion in admitting this evidence about his prior sexual activity with other children. For one thing, it was not unduly remote or dissimilar (four years before). At that time, both B. and A. were about seven years old, the same age as L. in the current set of charges, while Miramontes was an adult in his late 30's and early 40's. The prior acts of sexual misconduct described in the testimony of B. and A. were similar in nature to those charged, and were described in sufficient detail to make them probative (even allowing for the then young age of the children and the passage of time, presumably affecting their memories). It is not dispositive that no charges were filed in Mexico, nor that the physical exams of B. and A. were inconclusive, since the major features of the prior sexual conduct closely resembled those in the current charges.

Accordingly, the trial court had an adequate basis to conclude that the prior offense evidence was not impermissibly inflammatory in nature; "prejudicial" is not synonymous with "damaging," as suggested in *People v. Bolin, supra,* 18 Cal.4th 297, 320. Nor was the presentation of this evidence, by two witnesses, unduly burdensome in terms of trial time.

With respect to Miramontes's contention that the prior offense testimony must have been inordinately confusing to the jury, the record shows that the trial court took pains to inform the jury of the limited purpose for which the testimony of B. and A. could be considered, by giving it three sets of instructions on that issue. Further, the trial court had an adequate basis, in the weighing process of Evidence Code section 352, to conclude that the prior offense evidence was neither cumulative nor unnecessary, merely because the current three victims were also available to testify. Instead, since Miramontes was challenging the credibility of the current three victims, it was well within the discretion of the trial court to carry out this balancing process in favor of allowing the prior offense testimony for the purpose of showing propensity.

Accordingly, finding no error in admission of this evidence, we need not conduct any harmless error analysis. (See *People v. Walker* (2006) 139 Cal.App.4th 782, 808 [43 Cal.Rptr.3d 257] [" 'the erroneous admission of prior misconduct evidence does not compel reversal unless a result more favorable to the defendant would have been reasonably probable if such evidence were excluded' "].)

## II

### *FEDERAL DUE PROCESS CONTENTIONS*

In *Falsetta, supra*, 21 Cal.4th 903, 913, our Supreme Court acknowledged the federal rule that "[t]he admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair. (*Estelle v. McGuire* (1991) 502 U.S. 62, 70 [116 L.Ed.2d 385, 112 S.Ct. 475]; [citations].) *Estelle* expressly left open the question whether a state law permitting admission of propensity evidence would violate due process principles. [Citations.]" Thus in *Falsetta, supra*, 21 Cal.4th 903, 922, the court rejected just such a facial due process challenge to Evidence Code Section 1108.

Miramontes acknowledges that *Falsetta, supra*, 21 Cal.4th 903, 922 forecloses his state law claim of violation of his due process rights. (See *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1386 [finding that the erroneous admission of irrelevant prior acts evidence was prejudicial].) He now raises the issue only to preserve it for any future review by the federal courts, and we need not discuss it here.

Likewise, Miramontes acknowledges that his substantive challenge to CALCRIM No. 1191, regarding propensity evidence, has been rejected by our Supreme Court in *Reliford, supra*, 29 Cal.4th 1007, 1012–1016. (See also *People v. Cromp* (2007) 153 Cal.App.4th 476, 480 [62 Cal.Rptr.3d 848].)

This argument is raised here only to preserve it for any future review by the federal courts. While we understand the purpose of raising these issues, we must follow the directions of our Supreme Court and reject Miramontes's due process contentions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## DISPOSITION

The judgment is affirmed.

Nares, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 16, 2011, S188962.