Filed 5/15/13  P. v. Jessee CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MARK JESSEE,<br><br>　　　Defendant and Appellant. | D061402<br><br><br>(Super. Ct. No. SCD225723) |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Affirmed.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kimberley Donohue, A. Natasha Cortina, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Mark Jessee of three counts of a lewd act on a child (Pen. Code, § 288, subd. (a); counts 1, 2 and 3) and aggravated sexual assault (Pen. Code, §§ 269/286; count 4). The trial court sentenced him to an indeterminate term of 15 years to life on count 4, plus a consecutive determinate 10-year state prison term on counts 1 through 3 (a midterm of 6 years for count 1 and consecutive two-year terms for counts 2 and 3). On appeal, Jessee contends the trial court prejudicially erred by admitting certain evidence under Evidence Code[1] sections 1108 and 1101. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Jessee does not challenge the sufficiency of the evidence of his convictions, so we set out the offenses in a summary fashion for purposes of evaluating his evidentiary error claims about prior charged and uncharged misconduct. (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1090 (*Miramontes*).)

In 2004, Jessee's younger brother, Angelo L., permitted Jessee to live with him and Angelo's then 10-year-old daughter A. in a two-bedroom home while Angelo's wife G., a service member, was deployed. A. and Angelo shared one room while Jessee slept in the other. During the next few months, while Jessee was babysitting A. and they were alone, Jessee touched her inappropriately, taking her shirt off and touching her breasts. He also hit and sodomized A. on one occasion, removing her clothes and putting her face down on his bed to do so, when he became upset after she discovered pornographic

---

[1] All statutory references are to the Evidence Code unless otherwise stated.

videos in his room.  A. asked him to stop but he did not.  Afterwards, Jessee told A. she could not tell anyone he had touched her in that way.

In 2009, Angelo began counseling, which revealed that when he was six years old and Jessee was about 11 years old, Jessee had made Angelo orally copulate him.  Angelo reported the sexual abuse by Jessee to G., who had since moved to Maryland after her return from deployment, and G. questioned A., who denied any abuse by Jessee.  About a month later, however, in late May or early June of 2009, A. finally told her mother about Jessee's actions.  G. informed police in Maryland.

Before trial, the court granted the People's in limine motions to introduce evidence of Jessee's sexual acts against Angelo, as well as the testimony of Deborah F., who met Jessee while walking home from school and had a sexual relationship with him when she was 13 years old.  The court permitted introduction of the evidence concerning Angelo, reasoning the oral copulation acts between Angelo and Jessee were not more inflammatory than the offenses against A.; the acts were committed against relatives; while the conduct was not as similar as the incident with A., it did not need to be under section 1108; and the conduct was not so prejudicial that it should be removed from the jury's consideration.  The court also reasoned that Jessee subsequently had not led a blameless life, thus lessening any concern about remoteness.  As to Jessee's offenses with F., the court allowed the testimony under section 1108 as well as 1101, subdivision (b) regarding Jessee's intent, possibly lack of mistake or accident, and knowledge.

Accordingly, at trial, F. testified that when Jessee was 23 years old and she was 13 years old, Jessee led F. to believe they were starting a boyfriend-girlfriend relationship;

3

Jessee would walk her to and from school, and bring her flowers and gifts, but it quickly turned into kissing and then a sexual relationship. While F. was 13 years old and over the next two years, Jessee fondled F.'s breasts, engaged in sexual intercourse with F., and sodomized her with his fingers. F. testified there was force involved in their sex acts in that she did not feel she had a choice. She also testified Jessee physically hurt her, once throwing her across a room. Jessee instructed F. to keep their relationship a secret so she did not tell her parents, but her parents ultimately learned of it and the relationship ended. After Jessee's acts with F. were reported to police, Jessee pleaded guilty, served five months in jail, and was put on three years of probation.

The People also introduced Jessee's interview with San Diego Police Detective Stacee Botsford, during which Jessee admitted the sexual conduct with Angelo and F., but denied any wrongdoing with A. As for Angelo, Jessee claimed they were just kids "fooling around with each other sexually" and that it was a "mutual thing." In that interview, Jessee said that when Angelo was older, he had wanted to continue that relationship but that Jessee made it clear it was not going to happen. Jessee told the detective that Angelo perceived the situation as molestation, was "in a rage" about the past, had accused Jessee of ruining his life, and had "flooded" his and his girlfriend's phones with text messages. Jessee said Angelo told him he would not stop until he "ruin[ed] [Jessee's] life," and he anticipated that Angelo or one of his friends would try to hurt him because of it.

*Defense Evidence*

4

Jessee, who was 44 years old at the time of trial, testified in his defense. He admitted to being a "very self-centered drug addict and alcoholic" before becoming involved in the church, which caused him to change his behavior. He acknowledged his relationship with F., but denied having any interest in prepubescent girls then or at present. Jessee denied sexually or physically assaulting F., but conceded he hurt her because she was not emotionally ready for that "kind of relationship."

Jessee admitted that when he was 11 and 12 years old, after swimming or going to the beach and then showering, he and Angelo would touch each other's genitals and orally copulate each other. He did not recall forcing Angelo, but stated it was his idea and he admitted responsibility for the situation.

Jessee testified he did not rape A., sodomize her, touch her breasts in a sexual or any way, or view her in a sexual way. He denied assaulting or punching her.

I. *Admission of Charged and Uncharged Misconduct to Prove Propensity under Section 1108*

Jessee contends the trial court prejudicially erred by admitting evidence of the sexual abuse of his brother Angelo, as well as his prior sexual contact with F. Pointing out his counsel had conceded the evidence fell within the scope of section 1108, Jessee maintains the evidence was more prejudicial than probative, and should have been excluded under section 352.

A. *Legal Principles*

Generally, evidence of a defendant's character is not admissible to prove his conduct on a specific occasion conformed to his character. (§ 1101, subd. (a).) An

exception to this rule is set forth in section 1108, subdivision (a), which states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

Under section 352, the trial court may "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) "The weighing process under Evidence Code section 352 'depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules.' " (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1097.) When considering whether to exclude evidence of another sexual offense under section 352, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.) "[T]he probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the

6

offenses, and the independent sources of evidence (the victims) in each offense . . . ." (*Id.* at p. 917.)  Further, "the prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*Ibid.*)  In evaluating whether to admit evidence of other sexual offenses, the court should consider " 'whether "[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses." ' " (*Miramontes*, 189 Cal.App.4th at p. 1097.)

On appeal, a trial court's ruling under section 1108 is subject to review for abuse of discretion.  (*People v. Loy* (2011) 52 Cal.4th 46, 61; *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104; *Miramontes*, *supra*, 189 Cal.App.4th at p. 1098.)  We will not find an abuse of discretion in admitting evidence under section 1108 unless the court's ruling " ' "falls outside the bounds of reason" ' " and the court has exercised its discretion in an arbitrary, capricious or patently absurd manner that has resulted in a miscarriage of justice.  (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1098; *People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

B.  *Prior Uncharged Sexual Acts with Angelo*

Jessee maintains the evidence of his sexual misconduct with Angelo was insufficiently probative or unduly prejudicial under section 352.  Relying on factors

7

discussed in *People v. Harris* (1998) 60 Cal.App.4th 727, he argues that the prior uncharged acts were at least as inflammatory as those against A. He argues that evidence of his uncharged acts had a high risk of causing the jury to punish him for them in the present case; that the prior misconduct, which occurred over 25 years previously in 1979, was remote; the prior misconduct was too dissimilar to the acts against A. to have any probative value; and the evidence had no tendency to show Jessee had a propensity for committing the type of sex crime charged in the present case absent expert testimony, which was not offered.

Regarding the similarity of the acts, the court in *People v. Loy*, *supra*, 52 Cal.4th 46 explained: " 'In enacting . . . section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of . . . section 1101.' [Citation.] . . . '[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under . . . section 1101, otherwise . . . section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' " (*Loy*, at p. 63, quoting *People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41; see also *Miramontes*, *supra*, 189 Cal.App.4th at p. 1099.) The similarity of the acts, however, are relevant to the trial court's exercise of discretion. (*Loy*, at p. 63.)

Here, while Jessee's acts against Angelo may not have been sufficiently similar to his acts against A. to be admissible under section 1101, there are nevertheless some similarities. The acts were committed against relatives: his brother and niece, and Jessee

8

took advantage of the victims at convenient times while they were isolated from others; Angelo in a bedroom and A. when he was babysitting her and no one was home. Both victims were young, prepubescent children at the time. Though we acknowledge some significant differences in the circumstances and acts against Angelo and A., we cannot say admission of Jessee's acts against Angelo is arbitrary, patently absurd, or otherwise a manifest abuse of the trial court's discretion.

Nor did the trial court err by concluding the acts against then six-year-old Angelo, alleged forced oral copulation,[2] were no more inflammatory than the forcible sodomy on A., who was 10 years old at the time the offenses took place. We disagree the facts of Jessee's actions against Angelo were so inflammatory or prejudicial as to preclude their admission in this case on the issue of his propensity to commit such acts. None of the prior acts involved extreme violence or severe injuries as did the defendant's prior conduct in *People v. Harris*, *supra*, 60 Cal.App.4th 727, on which Jessee relies.

Further, the People spent minimal time addressing Jessee's prior act against Angelo; it was introduced by two short questions to Angelo without any inflammatory details beyond the act[3] and via Jessee's admissions over the course of approximately

---

[2]    The People maintain that the evidence did not show Jessee used force to accomplish the oral copulation against Angelo, contrasting those acts with the forcible sodomy of A. Whether or not the acts against Angelo were forced, we nevertheless would not find them to be more inflammatory than Jessee's act of removing A.'s clothing, forcing her face down on the bed, and sodomizing her while she pleaded for him to stop.

[3]    "[Prosecutor:]  Sir, when you were a six-year-old boy, did the defendant ever commit any sexual acts on you?  [¶]  [Angelo:]  Yes.  [Prosecutor:]  What were they, sir? [Angelo:]  He made me perform oral on him."

three and a half pages of a 25-page transcription of his interview with Detective Botsford. Jessee's counsel then expanded on the incident in cross-examination of both Angelo and his redirect examination of Jessee's pastor, asking Angelo if he discovered the abuse by Jessee through counseling and asking Jessee's pastor if he believed Jessee was giving honest answers when he admitted to those acts during his police interview.

As for the passage of time since the acts, there are no specific time limits establishing when a prior offense is so remote as to be inadmissible (*People v. Pierce* (2002) 104 Cal.App.4th 893, 900), and appellate courts have upheld the admission of prior offenses committed 20 to 30 years before the offenses at issue. (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1388-1389 [prior gun assaults, including 28-year-old assault, properly admitted, particularly where similar assaults had recurred over a lengthy period of time]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 [30-year-old sex offense properly admitted]; *People v. Pierce*, at p. 900 [23-year-old rape conviction]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977-978, 991-992 [21- to 30-year old crimes]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1393, 1395 [18- to 30-year-old offenses properly admitted].) That Jessee committed other sex offenses against F. approximately 11 years later when he was 23 years old, adds probative value to the uncharged offenses against Angelo. (*Spector*, at p. 1389.)

We agree there was a risk the jury would be tempted to convict Jessee of the current charges to assure he was punished for the prior uncharged offense. (See *People v. Branch*, *supra*, 91 Cal.App.4th at p. 284; *People v. Frazier*, *supra*, 89 Cal.App.4th at

10

p. 42.)  But the trial court gave the jury instructions that focused its attention on the current charges and advised it about the limited way in which it could consider the evidence of the uncharged assault on Angelo in relation to those charges.[4]  We conclude those instructions "counterbalanced" that risk.  (*Frazier*, at p. 42; see also *Miramontes*, *supra*, 189 Cal.App.4th at p. 1103 [instructing jury on limited purpose of evidence of prior uncharged sex crimes reduced possibility of jury confusion].)

This court has explained that " ' "[t]he 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.  In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " ' "  (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1098; *People v. Dejourney*, *supra*, 192 Cal.App.4th at p. 1105; see also *People v. Karis* (1988) 46 Cal.3d 612, 638.)  "The code speaks in terms of *undue* prejudice" and thus evidence should be excluded as unduly prejudicial " 'when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or

---

4  The court instructed the jury with CALCRIM No. 1191, which told the jury:  (1) it could consider the evidence of uncharged sex offenses only if the People proved by a preponderance of the evidence that Jessee committed them; (2) if the People did not meet that burden, it was to disregard the evidence entirely; (3) if the jury decided Jessee committed the uncharged sex offenses, it could consider that evidence to help it decide whether he committed aggravated sexual assault of a child and lewd acts upon a child as charged in the current case; and (4) evidence of other uncharged sexual offenses was one factor to be weighed "together with all the other evidence" and was not sufficient by itself to prove his guilt of the current charges.  The jury was told to consider the instructions as a whole, and was instructed in detail on the reasonable doubt standard.  (Accord, *People v. Loy*, *supra*, 52 Cal.4th at p. 75.)  We presume the jury understood and followed the court's instructions.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.)

punish one side because of the jurors' emotional reaction.' " (*People v. Branch*, *supra*, 91 Cal.App.4th at p. 286.)

Here, we cannot say Jessee sufficiently demonstrated that the evidence of the uncharged acts against Angelo would unduly prejudice him with the jury, or that the prejudice resulting would substantially outweigh the probative value of the evidence for purposes of section 1108. The acts are "extremely relevant" to his charged offenses (*People v. Van Winkle* (1999) 75 Cal.App.4th 133, 141), particularly where Jessee tried to paint A. as mistaken or a liar. (*People v. Waples*, *supra*, 79 Cal.App.4th 1395 [propensity evidence highly relevant to dispute an attempt to paint current victims of sex offenses as liars or mistaken in their claims of molestation].) Under the relevant standards, and viewing the evidence in the light most favorable to the trial court's ruling (see *People v. Carter* (2005) 36 Cal.4th 1114, 1148), we cannot conclude the court's decision to admit Angelo's testimony as to defendant's prior acts was arbitrary, capricious, manifestly absurd, or exceeded the bounds of reason. (*People v. Mullens* (2004) 119 Cal.App.4th 648, 658.)

Thus, we perceive no miscarriage of justice in the admission of the prior act evidence as to Angelo under section 1108 to prove Jessee's propensity to commit the charged offenses. (*People v. Dejourney*, *supra*, 192 Cal.App.4th at p. 1105.) Even if we were to reach a different conclusion that an abuse of discretion occurred, it would be harmless error. Jessee maintains A.'s credibility was weak in view of the fact she had waited four years to report the misconduct; neither her father or mother noticed any signs of abuse; A. initially denied any abuse and only reported it to a vice principal after

12

getting into a fight at school; that in Jessee's prior trial on the charges, the jury was unable to reach a verdict resulting in a mistrial; and that the trial presented a close credibility call as reflected by the jury's request for a readback of A.'s testimony. He claims his credibility was stronger, and "bolster[ed]" by evidence of his religious transformation as well as the "requirement of honesty that is a prominent component of his faith." The record shows that the jury not only asked for a readback of A.'s testimony but also the recording of Jessee's interview with Detective Botsford. Contrary to Jessee's argument, we perceive from the jury's readback that it carefully reviewed the evidence to determine whether it presented a serious question concerning A.'s credibility and any reasonable doubt as to Jessee's guilt. Further, Jessee admitted that at the time of the offenses against A., he was still an alcoholic and smoked marijuana, often drinking four or five times a week and sometimes more, and drank to the point of intoxication. He admitted he maintained an addiction to pornography, some of which involved women dressed as young girls. He also admitted his inhibitions were lowered when he drank. The jury plainly determined A. to be credible and Jessee was not, and having reviewed A.'s testimony, the testimony of her father and mother, and the testimony of Detective Botsford, we conclude it is not reasonably probable an outcome more favorable to Jessee would have resulted absent any presumed error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

C. *Prior Offenses Against F.*

We likewise perceive no abuse of discretion in the court's admission of the evidence pertaining to Jessee's molestation of F. The jury learned that Jessee had pleaded

13

guilty in Oregon to a crime for his conduct with F., had served five months in jail, was on probation for three years, and had been required to register as a sex offender, though he failed to meet that requirement for several years. (Accord, *People v. Loy*, *supra*, 52 Cal.4th at p. 61 [defendant's conviction of prior assaults, which had been established and was certain, "strongly, support[ed] their admission" under sections 1108 and 352].) As in *Loy*, Jessee thus "bore no new burden of defending against the charges," and "[t]he jury would not be tempted to convict him of the charged crime to punish him for the earlier crime." (*Loy*, at p. 61; see also *People v. Lewis*, *supra*, 46 Cal.4th at p. 1287.) "Additionally, the conviction[] meant there was little danger of confusing the issues or requiring an inefficient minitrial to determine defendant's guilt of the previous crimes." (*Loy*, at p. 61.)

Further, the evidence regarding Jessee's offenses against F. bore some similarity to the present offenses against A., in that both offenses involved young girls, F. at age 13, and A. at age 10; both involved the fondling of their breasts, sodomy, the use of force or, at the very least, compulsion; and as to both, Jessee told the girls to keep the acts secret. As the People point out, F.'s testimony was brief; it took less than a half an hour of about a day and a half of trial testimony, and spanned only about 14 pages of the trial transcript. Under all of the circumstances, we cannot say the prejudicial factors outweighed the probative value of this evidence, and conclude the trial court did not act arbitrarily or irrationally in admitting it.

II. *Admission of Evidence of Jessee's Relationship with F. Under Section 1101*

Jessee further contends the trial court prejudicially erred by admitting the evidence as to F. under section 1101, subdivision (b).[5] Specifically, he maintains the evidence as to F.—which, as he characterizes it, established a "consensual" relationship with a "post-pubescent teenager"—was not sufficiently similar to the charged offenses to permit an inference of intent, and thus cannot support a rational inference he harbored the same intent in each situation. Jessee also points out his defense was not that he lacked the requisite lewd intent, but that he did not touch A. at all; that the incidents never occurred. Thus, he argues, the evidence lacked any probative value on any issue in the case. Finally, Jessee argues any possible slight probative value was outweighed by the risk of prejudice.

Because we have concluded the trial court did not err in finding the evidence as to F. relevant and admissible under section 1108, we need not discuss its admissibility under section 1101. (*People v. Soto*, *supra*, 64 Cal.App.4th at pp. 983-984, 992; see, e.g., *People v. Lewis*, *supra*, 46 Cal.4th at p. 1288 [defendant's failure to establish an abuse of

---

5    Under section 1101, subdivision (b), " '[e]vidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.' " (*People v. Carter*, *supra*, 36 Cal.4th at p. 1147; see also *People v. Walker* (2006) 139 Cal.App.4th 782, 795-796.) "[T]hat a defendant previously committed a similar crime can be circumstantial evidence tending to prove his identity, intent, and motive in the present crime. Like other circumstantial evidence, admissibility depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence *vel non* of some other rule requiring exclusion." (*People v. Roldan* (2005) 35 Cal.4th 646, 705, disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.) "When a defendant pleads not guilty, he or she places all issues in dispute, and thus the perpetrator's identity, intent and motive are all material facts." (*People v. Walker*, at p. 796, citing *Roldan*, at pp. 705-706.)

discretion in admitting evidence prior assault under section 1101 rendered irrelevant the question of whether all of that evidence was admissible under section 1108].) Nevertheless, our analysis as to the similarities between the acts against F. and those against A. is sufficient to establish the propriety of their admission under section 1101, subdivision (b), particularly as to common plan and scheme. " 'To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual. [Citation.] '[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances.' " (*People v. Walker*, *supra*, 139 Cal.App.4th at p. 803.) It is of no moment that the court declined to admit the evidence on the intermediate fact of common scheme or plan. " 'If a judgment rests on admissible evidence it will not be reversed because the trial court admitted that evidence upon a different theory, a mistaken theory, or one not raised below.' " (*People v. Blacksher* (2011) 52 Cal.4th 769, 806, fn. 21.)

Though Jessee's intent with respect to the offenses against A. may not have been disputed and F.'s testimony not necessarily probative on that particular issue, the fact that F.'s testimony was highly probative on Jessee's propensity, common design or plan, and the absence of mistake or accident, renders nonprejudicial its admission for the purpose of proving intent. (Accord, *People v. Waples*, *supra*, 79 Cal.App.4th at pp. 1395-1396.)

16

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.