Filed 2/4/16  P. v. Rosson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN THOMAS ROSSON III,<br><br>    Defendant and Appellant. | D069305<br><br><br><br>(Super. Ct. No. INF063118) |


APPEAL from a judgment of the Superior Court of Riverside County, Dale R. Wells, Judge.  Affirmed in part, reversed in part, and remanded with directions.


Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kristen Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant John Thomas Rosson III of committing various sex crimes against his eleven-year-old daughter, S.R., including aggravated sexual assault, lewd acts, and exhibiting harmful material.  On appeal, Rosson challenges (1) the admission of evidence regarding other prior crimes and bad acts; (2) the omission of certain jury instructions; (3) his two convictions for exhibiting harmful material to a minor, Penal Code[1] section 288.2, subdivision (a), on grounds of insufficient evidence; and (4) the trial court's imposition of six consecutive terms for sex crimes under section 667.6, subdivision (d), without making findings as to whether each crime occurred on a separate occasion.

We conclude substantial evidence supports only one conviction for exhibiting harmful material to a minor under section 288.2, subdivision (a), and reverse one of Rosson's convictions.  On remand for resentencing, the trial court is directed to make findings consistent with the requirements of section 667.6.  In all other respects, the judgment is affirmed.

PROCEDURAL BACKGROUND

Rosson was charged by amended information with the following offenses:  (1) two counts of committing lewd and lascivious acts on a child under 14, by use of force, violence and/or duress, e.g., forcing her hand to touch his penis (§ 288, subd. (b)(1)); (2) two counts of exhibiting harmful matter as defined in section 313 to a minor with sexual intent and the intent to seduce the minor (§ 288.2, subd. (a)); (3) two counts of

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

forcible oral copulation (§ 269, subd. (a)(4)); and (4) two counts of forcible sexual penetration (§ 269, subd. (a)(5)). As to each count, it was alleged that the crime took place between September 1 and September 12, 2008, and the victim was S.R. Rosson pleaded not guilty to each count.

A jury found Rosson guilty of all charges. The trial court imposed sentences to run consecutively for each of the counts, totaling 79 years eight months to life in prison. This appeal was taken from a judgment of conviction.

## FACTUAL BACKGROUND

The People's principal witnesses regarding detailed sexual acts were the victim, S.R. and, to a lesser extent, S.R.'s mother, Jessica.[2] Jessica was a codefendant and participant in certain acts of sexual molestation against S.R. Jessica pleaded guilty and agreed to truthfully testify against her husband, Rosson. Rosson invoked his right not to testify and did not present any of his own witnesses at trial. We recite the evidence in the light most favorable to the jury's verdict.

During conversations about their "deepest, darkest secrets," Rosson indicated to Jessica that he was sexually interested in little girls and believed himself to be a pedophile. When Rosson was a young teenager, his parents had run a day care in their home. Rosson confided in Jessica that his parents had "lost their childcare business" because of his inappropriately touching two and three-year-old girls in his parents' care. Rosson's mother independently confirmed she had operated a day care in her home and

---

2    We refer to Jessica Rosson by her first name for the sake of clarity. We intend no disrespect.

3

Rosson had access to the little girls. Jessica also testified that Rosson had asked her to shave her pubic hair in order to look "innocent" like a child, as well as asked her to dress up like a prepubescent girl. Photos of Jessica dressed up in this state, taken by Rosson, were admitted into evidence. Further, Rosson had told Jessica that he liked "child porn."

During their marriage, Rosson physically and sexually abused Jessica. S.R. was born in May 1997. When S.R. was three years old, Jessica admitted to Rosson that she had had an extramarital affair, and his abusive behavior worsened. He routinely raped Jessica, forcing her to have oral, vaginal, and anal sex with him. He hit her, burned her with cigarettes, and choked her, once to unconsciousness. He also yelled and emotionally abused her. Rosson repeatedly threatened to kill Jessica, S.R., and himself, if Jessica ever told anyone about being abused.

Throughout her childhood, S.R. witnessed Rosson's yelling, his physical abuse of Jessica, Jessica's emotional state, and the burn marks left on Jessica's body. Rosson was "a very controlling person" and larger in height and weight than S.R.[3] He also physically abused S.R., including spanking her with a belt. S.R. was scared of her father, and did what he told her to do; otherwise, she believed she "was going to be in trouble." When S.R. was seven, Rosson forced her to orally copulate him. S.R. testified that Rosson "grabbed my hair and told me to give him a blow job"—his penis touched her mouth, and as he grabbed her hair with his hands, Rosson moved her head back and forth. S.R. told Jessica about the incident, but Rosson stopped Jessica from calling the police.

---

3    In a 2014 probation officer's report, Rosson's height and weight were noted as over six feet tall and 200 pounds.

The events underlying the People's charged offenses occurred in September 2008 when S.R. was 11 years old. S.R. was beginning sixth grade, a time when children are offered sex education courses in school. Rosson did not want S.R. enrolled in the classes because he thought it would be better for his daughter to learn "stuff like that" from him, in their home. Rosson and Jessica sent the school a letter opting S.R. out of sex education classes. According to Jessica, the letter ignited (or refueled) Rosson's desire to "teach" S.R. about how to have sex and have S.R. involved in his and Jessica's sexual activities. S.R. had already begun menstruating.

One day, S.R. was coming out of the shower and had not yet gotten her towel, when Rosson walked into the bathroom and "closed the door really quick," causing S.R. to "freak[] out." The next day, S.R. was sitting in her room, playing "build-a-bear" (an online game) on her computer. Rosson said he wanted to show her something, and she followed him into his room. In his bedroom, Rosson first said, "Oh, I want to show you it's okay for parents to see their child naked." From his laptop computer, Rosson proceeded to show S.R. "all of these [W]eb[]sites of a beach," which S.R. described as images of "a family . . . on a nude beach," while he made comments of it being normal for parents to see their child naked.

Rosson further showed S.R. what she described as "child pornography" that he "wanted to demonstrate . . . on me." When asked to describe the "child pornography" she had been shown by Rosson, S.R. first did not remember, but when asked whether it was "just pictures or whether they were videos," S.R. responded, "one was a video." S.R described what she saw in the video: "[a] girl giving a guy a blow job, then the guy

5

having sex with her."  Rosson said he wanted to demonstrate the video on S.R., which S.R. understood to mean that "[Rosson] wanted to do what the video was doing."  Rosson unclothed S.R. and himself.  While Rosson kissed her lips and body, he inserted his fingers in her vagina, and then stuck his penis in her vagina.  S.R. was in pain, but no one else was home, and she was "terrified" and "too scared" of getting in trouble to make Rosson stop.  Next, "after he was done," Rosson wanted to teach S.R. how to give him a "blow job" like the girl in the video had been doing.  Rosson stuck his penis in her mouth, and directed S.R. to "suck on it," "like a lollipop."  Eventually, Rosson ejaculated on S.R.'s stomach, and said to her:  "Some girls like to taste it.  You can taste it if you want."  S.R. did not taste Rosson's semen, and instead went to the bathroom.  She experienced bleeding from being vaginally penetrated.

The next day, S.R. was in her room listening to a song from "High School Musical."  Rosson came in her room, wanted to dance with her, and began taking off her clothes.  He then took S.R. into his bedroom, removed all of his own clothing, and started playing with his penis by moving it up and down.  He next kissed S.R. "everywhere" on her body, including her lips, breasts, and vagina.  Further, he "mess[ed] around with" her vagina, touching inside of it with his fingers and moving his fingers up and down.  After putting S.R.'s clothes back on, he made her give him a "hand job"—"putting [her] hand on his penis and moving it up and down."  S.R. testified that Rosson's penis was erect while she touched it.  Although the exact timing is unclear, Rosson also put his penis in S.R.'s mouth during the "High School Musical" incident.

Within a week or so, another incident occurred in the middle of the night. Jessica and Rosson were trying to have sexual intercourse, but "it wasn't working," and he was getting frustrated. Rosson woke S.R. up and brought her into his and Jessica's bedroom from her room. All three were naked. According to S.R., her parents rubbed lotion on "her tummy." Next, her parents began having sex with each other while she sat on the bed. Rosson instructed S.R. and Jessica to "make-out" with each other. Despite whispering to each other that they did not want to do it, S.R. kissed her mother on the lips. Rosson also told Jessica to touch S.R., and after initially objecting, Jessica proceeded to touch S.R.'s breasts and vagina. Rosson watched S.R. and Jessica as everything was going on. Jessica testified that Rosson told her to give him a blow job (oral copulation) while S.R. sat on the bed, and then Rosson instructed S.R. to do the same, which S.R. did.[4] Rosson's penis was erect during the oral copulation. Further, Rosson touched, and put his penis in, S.R.'s vagina. S.R. testified that she was lying on the bed, face up, when her vagina was penetrated, and she could not push her father off because "he was too heavy." Jessica testified that, from her viewpoint, "it appeared" Rosson's penis penetrated S.R. Jessica remembered with certainty that Rosson "ejaculated on [S.R.'s] stomach," and Rosson told Jessica and S.R. "to go clean up."

---

[4]  S.R. denied oral sex with Rosson on this occasion. The jury could have chosen to believe Jessica's testimony on this point, which was more expansive. For example, Jessica specifically testified that she recalled thinking to herself that "[S.R.'s] done this before" because "it just seemed like [S.R.] knew what she was doing." S.R. testified that she "held" Rosson's penis.

After that night's events, S.R. agreed with her mother to "pretend it was all a dream," i.e., keep everything a secret, because she was scared of Rosson and she did not want her parents to get in trouble. Several days later, Jessica confided in a friend about some of Rosson's inappropriate behavior toward S.R., and her friend became alarmed. Despite Jessica's pleas to keep everything secret, her friend notified the police, which prompted a criminal investigation of Rosson and Jessica.

In forensic interviews, S.R. first denied any sexual abuse and said it had just been a dream. Eventually, S.R. disclosed most of what her father had done to her. A forensic medical exam of S.R.'s vagina revealed damage and scarring to her hymen tissue consistent with a chronic injury from sexual abuse. The medical examiner testified that the genital examination of S.R. was consistent with the history relayed by S.R., and sexual abuse was "highly suspected." A psychologist at trial testified regarding common behaviors of sexually abused children, including reluctance or delays in disclosing instances of abuse.

Cyber investigators and forensic specialists were able to uncover a host of information stored in Rosson's laptop computer, under the username and password-protected profile "John," which was the only profile on the computer. A digital forensic examiner found links to four pornographic Web sites saved in the "favorites" section of the computer's Internet browser. Two of the Web sites required paid membership access the examiner apparently did not have; however, two of the sites were observed to contain rows of squares, and each "square" was a screenshot of a different pornographic video.

8

The examiner testified that in each of these screenshots, he observed people engaged in sexual acts, including penile/vaginal intercourse, oral sex, and/or digital penetration.

Further evidence showed that "the user name of John" had actually visited various Web sites, including his "favorites" and other known child pornography Web sites and he had searched and/or viewed information on "family nudism." From the Web sites previously viewed by Rosson, the examiner saw pornographic images of children in various states of undress or completely undressed. Finally, the forensic examiner also recovered approximately 14 pictures of young girls that had been deleted (but previously viewed) from Rosson's laptop. The pictures, which were admitted into evidence, showed the "young females in various states of undress as well as sexual acts." From a desktop computer in S.R.'s home, someone on September 16, 2008, had run the Internet search, "Can an 11-year-old get pregnant?"

When S.R. was seven to 11 years old, she had observed Rosson's ongoing violent behavior, was scared of him, and believed she or her mother would be hurt if she did not do what he wanted. S.R. never wanted Rosson to touch any part of her body in the ways he had, it had made her feel worthless, and she felt that her mother should have protected her.

Several years after the charged offenses occurred, Rosson wrote a letter to Jessica, which was admitted into evidence at trial. Rosson wrote he wanted to "prevent future acts against children" and "protect the future" from his "thoughts for children" by giving himself to a mental institution.

9

DISCUSSION

I

*Admissibility of Evidence Regarding Prior Uncharged Sexual Offenses*

The trial court admitted evidence of prior sex crimes/acts by Rosson, showing his propensity to commit the charged offenses against S.R.  Rosson contends evidence regarding his commission of spousal rape against Jessica and his molestation of young girls at his parents' daycare should not have been admitted.[5]

"Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type, and essentially allowing such evidence to be used in determining whether the defendant is guilty of the current sexual offense charge."  (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1096 (*Miramontes*).)  On appeal, we review the admission of other crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion.  (*Id.* at p. 1097.)  The trial court weighs the probative value of proffered prior crimes evidence with its potential of causing undue prejudice.  (*Id.* at pp. 1097-1098.)

Rosson first argues that his alleged rape of Jessica, a physically mature adult woman, was not sufficiently similar to the charged offenses to establish his propensity to molest children.  Under Evidence Code section 1108, subdivision (d)(1)(A)-(F), the prior

---

5       Rosson also challenges the admission of evidence concerning prior uncharged molestations of S.R., but concedes defense counsel did not object to the evidence at trial. The issue is forfeited.  (*People v. Navarette* (2003) 30 Cal.4th 458, 497.)

10

and charged offenses are considered sufficiently similar for admissibility if they are both the type of sexual offenses enumerated there, which is the case here. (*Miramontes*, *supra*, 189 Cal.App.4th at p. 1099; *People v. Frazier* (2001) 89 Cal.App.4th 30, 41 ["It is enough the charged and uncharged offenses are sex offenses as defined in section 1108."].) Moreover, Rosson made Jessica pretend to be a prepubescent girl and wanted her to look sexually "innocent." Admitting Jessica's testimony on these points did not require much time, did not create a danger of undue prejudice, and was unlikely to confuse or mislead the jury. (Evid. Code, § 352.) The trial court did not abuse its discretion in admitting evidence of spousal rape.

Similarly, evidence concerning Rosson's prior molestations of young girls at his parents' day care was properly admitted under Evidence Code sections 352 and 1108. The evidence tended to show Rosson's propensity to sexually molest little girls, and his lewd touching of girls at his parent's day care was less likely than the charged offenses to evoke an emotional bias against him. (See *Miramontes*, *supra*, 189 Cal.App.4th at p. 1098.)

Rosson asserts there was no independent evidence to prove the day care molestations, relying on the corpus delicti rule. Under current law, the corpus delicti rule, which requires proof regarding the occurrence of a crime independent of the defendant's own statements, does not apply to propensity evidence introduced during trial. (*People v. Davis* (2008) 168 Cal.App.4th 617, 636-638 [surveying cases].) Rosson did not assert an objection at trial on corpus delicti grounds, and has accordingly forfeited the issue on appeal. (*People v. Horning* (2004) 34 Cal.4th 871, 899.) The record

11

supports the conclusion that if defense counsel *had* asserted such an objection, the People could have elicited additional testimony from Rosson's mother (or called another witness) rather than limiting her testimony to foundational facts. Further, defense counsel's failure to object on corpus delicti grounds did not constitute ineffective assistance because counsel's conduct was objectively reasonable based on current law. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) Finally, defense counsel may have made the tactical choice not to raise an objection that could have resulted in additional evidence being introduced to support Rosson's commission of other child molestations. (See *Strickland v. Washington* (1984) 466 U.S. 668, 689.)

Rosson also argues admission of propensity evidence under section 1108 violates a defendant's constitutional right of due process. He acknowledges our Supreme Court has rejected the argument. (*People v. Falsetta* (1999) 21 Cal.4th 903, 921-922.) As in *Falsetta*, we conclude the trial court had the option of excluding unduly prejudicial propensity evidence under Evidence Code section 352, and thus, Rosson's due process rights were not violated. (*Ibid.*) The court did not abuse its discretion in admitting evidence of Rosson's prior sex crimes.

II

*Admissibility of Evidence to Show Sexual Intent*

Rosson next challenges the admission of character evidence introduced for the specific purpose of proving a fact relevant to the charged crimes, i.e., sexual intent. The disputed evidence includes Rosson's request for Jessica to dress up like a prepubescent girl, asking her to shave her pubic hair to look like a little girl, his viewing of child

12

pornography, and opting S.R. out of sex education courses for the purpose of teaching her about sex at home. Rosson contends his "intent" was not at issue because the acts described by S.R. were unquestionably sexual and the proffered evidence was more prejudicial than probative. His objections to the admission of this evidence at trial sufficiently preserved the issue for appeal.

Evidence that a defendant committed crimes or acts other than the crimes charged in the information may be admitted if such evidence tends to be relevant on an issue other than to establish defendant's propensity or character trait to commit the charged offenses. (Evid. Code, § 1101, subd. (b); *People v. Swearington* (1977) 71 Cal.App.3d 935, 947 [evidence that defendant was previously seen nude in public was relevant to establish the requisite sexual intent for charged acts of indecent exposure].) Evidence Code section 1101, subdivision (b), provides a nonexhaustive list of potentially relevant facts that may be admitted to prove other than the defendant's disposition to commit the charged crimes, including intent, preparation, or absence of mistake.

Rosson contends neither his intent nor his mental state was at issue. However, Rosson pleaded not guilty to the charged offenses and did not concede any elements, requiring the prosecution to prove every element of each charged offense beyond a reasonable doubt. (*People v. Escudero* (2010) 183 Cal.App.4th 302, 313 ["A not guilty plea puts at issue all elements of the charged offense."] (*Escudero*).) The prosecution was required to prove Rosson committed lewd acts on S.R. with sexual intent and exhibited harmful materials to her for the purpose of engaging in sexual conduct, rather than inadvertently or innocently. (§§ 288, subd. (b)(1), 288.2, subd. (a).) The other acts

13

evidence tended to show Rosson's contacts with his daughter were made with the intent to satisfy his sexual desires.

Relying on Evidence Code section 352, Rosson argues that even if evidence regarding his other bad acts was admissible, its potential for undue prejudice outweighed its relevance. The trial court's weighing process is reviewed for an abuse of discretion, and will not be disturbed unless shown to be arbitrary, capricious, or patently absurd. (*Escudero*, *supra*, 183 Cal.App.4th at p. 310.) We conclude there was no abuse of discretion. Rosson's theory at trial was that Jessica had been the only perpetrator, she had dreamed up events against her husband, and S.R. had been brainwashed. The People's evidence was relevant to proving Rosson methodically initiated and carried out the incidents because he was driven by a sexual attraction to children. The other acts were not likely to motivate a purely emotional reaction, and were not unduly prejudicial within the meaning of Evidence Code section 352. (*Escudero*, at p. 312.) The trial court did not abuse its discretion in admitting evidence about Rosson's conduct toward Jessica, his collection of child pornography, and his desire to teach S.R. about sex at home.

### III

### *Jury Instructions*

Rosson argues the trial court omitted certain jury instructions, the cumulative effect of which was prejudicial. We discuss each in turn.

A. Instruction on Permissible Uses of Sexual Intent Evidence

Rosson argues the trial court erred by not sua sponte instructing on limited uses of evidence admitted under Evidence Code section 1101, subdivision (b), discussed above.

14

He concedes the instruction was not requested at trial. We conclude the court had no duty to instruct sua sponte on the limited admissibility of evidence of past crimes or acts. (*People v. Collie* (1981) 30 Cal.3d 43, 64.) This is not an "extraordinary case" where "evidence of past offenses is a dominant part of the evidence against the accused," requiring the court to act when counsel has not. (*Ibid.*) The principal evidence to support each charged offense was S.R.'s testimony, and to a lesser extent, Jessica's testimony for the events in which she was involved. The evidence regarding other acts by Rosson was ancillary.

Similarly, we conclude defense counsel's failure to request a limiting instruction did not constitute ineffective assistance of counsel. It is not reasonably probable Rosson would have obtained a more favorable result had his counsel requested a limiting instruction on uses of prior crimes or other acts evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [reversal required if after examining all the evidence, we are of the opinion that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].) As Rosson acknowledges, most of the acts described by S.R. were "overtly" sexual in nature, such that his intentions could hardly be doubted. By finding Rosson guilty of all charges, the jury necessarily chose to believe S.R. Consequently, even if defense counsel's performance was deficient in some respect, there was no prejudice to Rosson. The trial court was not required to sua sponte instruct on limited uses of evidence under Evidence Code section 1101, subdivision (b).

B.  Instruction on Accomplice Testimony

Rosson argues the trial court erred by not instructing the jury to view Jessica's testimony with caution because she was an accomplice to the crimes against S.R.[6] "[W]hen an accomplice is called to testify on behalf of the prosecution, the court must instruct the jurors that accomplice testimony should be viewed with distrust." (*People v. Guiuan* (1998) 18 Cal.4th 558, 565.)  The People do not contest that Jessica was an accomplice, but contend the court's omitting to provide a specific cautionary instruction was harmless.  We agree any error was harmless.  (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

In *People v. Lewis*, (2001) 26 Cal.4th 334, our Supreme Court discussed how the provision of other jury instructions on evaluating witness credibility in conjunction with the prosecutor's arguments to consider whether the accomplice witness was telling the truth can effectively inform the jury to view that witness's testimony with distrust absent the specific instruction.  (*Id.* at p. 371.)  Here, the jury was instructed generally on how to judge witnesses (CALCRIM No. 105), evaluating witness credibility (CALCRIM No. 226), and how to consider the testimony of a witness with a felony conviction (CALCRIM No. 316).  The jury knew Jessica pleaded guilty to molesting S.R. and entered a plea agreement to testify against Rosson, and Rosson's trial strategy consisted of discrediting Jessica and portraying her as a liar.  Moreover, in closing, the prosecutor

---

6    Rosson also contends the trial court should have instructed generally on the need for an accomplice's testimony to be corroborated (§ 1111), but apparently concedes Jessica's testimony was corroborated, rendering any error harmless.

16

highlighted the issue of evaluating Jessica's credibility. The prosecutor argued there was "no doubt" Jessica was a "horrible mom, a horrible person, [and] a child molester" who would spend 16 years in state prison; nevertheless, the prosecutor walked the jury through independent pieces of evidence that corroborated Jessica's testimony. Thus, the existing instructions and circumstances sufficiently informed the jury to view Jessica's testimony with caution. (*People v. Lewis*, *supra*, 26 Cal.4th at p. 371 ["Any reasonable juror would reach this conclusion without instruction."].)

C. Instruction on Rosson's Out-of-court Statements

Rosson argues the trial court erred by not sua sponte instructing the jury to view Rosson's unrecorded out-of-court statements with caution (CALCRIM No. 358). The statements in question include him being sexually attracted to little girls and liking child pornography, and directions to S.R. in connection with sexually assaulting her (e.g., wanting to "demonstrate" the pornographic video or instructing her to suck his penis like a "lollipop"). Rosson contends that the instruction was required to be given sua sponte at the time of his trial, a requirement since eliminated by the Supreme Court. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189 [trial court has no sua sponte duty to give cautionary instruction on defendant's extrajudicial oral statements since general instructions on witness credibility must be given].)

Regardless of whether the instruction was required sua sponte, we conclude it is not reasonably probable the jury would have reached a result more favorable to Rosson had the cautionary instruction been given. The purpose of a cautionary instruction on unrecorded statements is to assist the jury in determining if a defendant's oral statement

17

was in fact made. (*People v. Dickey* (2005) 35 Cal.4th 884, 905.) Here, there is no evidence in the record contradicting the fact that Rosson's statements were made, and S.R.'s and Jessica's testimonies were generally consistent and corroborated. (See *id.* at p. 906 ["Where there was no such conflict in the evidence, but simply a denial by the defendant that he made the statements attributed to him, we have found failure to give the cautionary instruction harmless."].) Moreover, even if we disregard Rosson's unrecorded oral statements, the described acts committed by Rosson against his daughter were repulsive, sexual in nature, and established the elements of each charged crime. A more favorable result was not reasonably probable absent the error.

D. Cumulative Error

Rosson contends that the cumulative effect of the trial court's errors resulted in a fundamentally unfair trial and violation of due process. Based on our review of the record, the jury understood its responsibility to carefully evaluate each witness's testimony in the context of all the evidence. More importantly, as we have noted, the jury necessarily believed S.R. and found her to be truthful; she alone was the victim and witness to all of the charged crimes. Even if the jury had been instructed to more closely scrutinize certain testimony, we do not believe the jury would have accepted Rosson's trial theory that Jessica had dreamed and/or fabricated his involvement. There was no violation of due process.

18

IV

*Exhibiting Harmful Material to a Minor*

A.  Guiding Principles

We review Rosson's convictions for substantial evidence.  (*People v. Dyke* (2009) 172 Cal.App.4th 1377, 1381 (*Dyke*).)  Under this standard, we review the whole record most favorably to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence."  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Section 288.2, subdivision (a)(1) provides in material part:  "Every person who knows . . . that another person is a minor, and who knowingly . . . exhibits . . . any harmful matter that depicts a minor or minors engaging in sexual conduct, to the other person with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the minor, and with the intent or for the purposes of engaging in sexual intercourse, sodomy, or oral copulation with the other person, or with the intent that either person touch an intimate body part of the other, is guilty . . . ."

Rosson was convicted of section 288.2, subdivision (a)(2), which prohibits the same conduct as section 288.2, subdivision (a)(1) with the exception that the harmful matter used by the person "does not include a depiction or depictions of a minor or

19

minors engaged in sexual conduct."[7]  (§ 288.2, subd. (a)(2), (3).)  "Harmful matter" as used in section 288.2 is defined by section 313, which states:  " '[h]armful matter' means matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."  (§§ 313, 288.2, subd. (c).)  With certain exceptions, the test for harmful matter is comparable to the test for obscene materials.  (*Dyke*, *supra*, 172 Cal.App.4th at pp. 1382-1383 [reviewing *Miller v. California* (1973) 413 U.S. 15, 24].)

B.  Analysis

We conclude substantial evidence supports only one of Rosson's two convictions under section 288.2, subdivision (a).  The People acknowledge it is "unknown" whether the stored images and/or Web site links seized from Rosson's laptop computer were actually the ones shown to S.R.  In fact, there is no evidentiary basis to conclude that those specific images were shown to her.  As a result, the images could not have assisted the trier of fact, and do not assist us, in determining what was actually shown to S.R.  Based solely on S.R.'s testimony, the first set of Web sites Rosson showed her depicted a family on a nude beach.  While showing her these Web sites, Rosson commented, "it's okay for parents to see their child naked."  From this evidence, we cannot determine whether the material appealed to the prurient interest, was patently offensive, or lacked

---

7       Rosson was convicted of the 2008 version of this Penal Code statute, which is embodied in section 288.2, subdivision (a)(2).

20

any value to minors, nor do we see how the jury could so conclude. (*Dyke*, *supra*, 172 Cal.App.4th at p. 1385.)

However, S.R. went on to describe one video Rosson showed her of "[a] girl giving a guy a blow job, then the guy having sex with her." Rosson then wanted to "demonstrate" and "do what the video was doing," and he proceeded to force S.R. into a variety of sexual acts, including digital penetration, vaginal penetration, and oral copulation. Throughout her testimony, S.R. used particular words to describe sexual acts. She was 16 years old at the time of trial. We are persuaded that she understood the nature of, and distinction between, various sexual acts. The evidence sufficiently supports that Rosson showed S.R. one sexually explicit pornographic video qualifying as "harmful" under sections 313 and 288.2, subd. (a)(2). (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1295 (*Powell*).)

The People assert that S.R. was shown at least one other piece of harmful material to support a second conviction under section 288.2, based on S.R.'s testimony of Rosson showing her "child pornography" in combination with his possession of child pornography. However, as noted above, there is insufficient evidence to infer Rosson showed S.R. the specific Web sites or deleted images recovered from his laptop, and S.R.'s characterization of "child pornography" neither establishes it to be so nor does it speak to the quantity of materials she was shown. (*People v. Powell*, *supra*, 194 Cal.App.4th at p. 1290.) One of Rosson's convictions under section 288.2 must be reversed.

21

## V

### *Sentencing under Section 667.6*

Rosson contends the trial court erroneously concluded it had no discretion but to impose consecutive terms for the crimes implicated by section 667.6, subdivision (d), without a corresponding finding that each crime occurred on "separate occasions." The People respond that even though the trial court correctly found that the sex crimes of the same type occurred on separate occasions from each other (e.g., the lewd acts occurred separately from each other), the trial court did not make findings that each crime occurred on a separate occasion from every other crime. We agree remand is required for resentencing consistent with the requirements of section 667.6.

Section 667.6, subdivision (d) provides in relevant part: "[a] full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the *same victim on separate occasions*." (Italics added.) Subdivision (e) of section 667.6 includes the offenses of lewd acts, oral copulation, and sexual penetration.

"In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6,

subd. (d); see *People v. Garza* (2003) 107 Cal.App.4th 1081, 1092 [surveying cases and finding that oral copulation, digital penetration, and rape perpetrated on the same night in defendant's vehicle occurred on "separate occasions" because defendant had an adequate opportunity to reflect upon his actions between each act].)

The trial court did not make complete findings. Although the court recited the requirements of section 667.6, subdivision (d) in imposing what it believed to be mandatory consecutive terms, it only considered whether sex crimes of the same type occurred on separate occasions and did not determine whether each sex crime occurred on a separate occasion from another sex crime. On remand for resentencing, the trial court shall make these specific factual findings. (*People v. Irvin* (1996) 43 Cal.App.4th 1063, 1072.)

If the court determines that certain crimes occurred on the same occasion, it should consider whether to impose consecutive terms under section 667.6, subdivision (c)'s discretionary sentencing scheme. Section 667.6, subdivision (c) provides in relevant part: "a full, separate, and consecutive term *may be imposed* for each violation of an offense specified in subdivision (e) *if the crimes involve the same victim on the same occasion*." (Italics added.) We note the trial court already found a number of aggravating circumstances in its original sentencing decision. The court shall provide a statement of its reasons for imposing any consecutive terms. (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 411.)

DISPOSITION

Rosson's second conviction for exhibiting harmful material to a minor under section 288.2, subdivision (a) (Count 5), is reversed.  On remand for resentencing, the court shall:  (1) strike the eight-month sentence previously imposed on Count 5; (2) make specific factual findings on the question of whether the sex crimes were committed on "separate occasions" within the meaning of section 667.6, subdivision (d); and (3) if necessary, provide a statement of reasons for any consecutive terms imposed in which the court retains sentencing discretion.  In all other respects, the judgment is affirmed.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.

24