Filed 7/20/16  P. v. Khalif CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

WAEL FAYAEZ KHALIF,

    Defendant and Appellant.

E062821

(Super.Ct.No. FSB1105219)

O P I N I O N

APPEAL from the Superior Court of San Bernardino County.  Katrina West, Judge.  Affirmed in part and reversed in part.

Wallin & Klarich and Stephen D. Klarich for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

On September 17, 2014, a jury convicted defendant and appellant, Wael Fayaez Khalif, of attempted unlawful sexual intercourse with a minor (Pen. Code, §§ 664, 261.5, subd. (c), count 1),[1] and of going to meet with a minor for lewd purposes (§ 288.4, subd. (b), count 2).  Defendant was sentenced to state prison on count 2 for four years and to a consecutive four-month term on count 1.  The trial court stayed execution of defendant's sentence, and placed defendant on supervised probation for 36 months, with various terms and conditions, including that he serve 210 days in county jail.

On this appeal, defendant challenges both convictions, arguing (1) there was insufficient evidence to support either conviction, (2) the evidence showed he was entrapped into committing both offenses as a matter of law, (3) the trial court erred in not giving a unanimity instruction sua sponte on count 2, and (4) the trial court erred in admitting evidence of defendant's prior sexual offense.  Defendant also asserts the combined effect of the trial errors violated his constitutional due process rights.  The People concede that defendant's count 1 conviction for attempted unlawful sexual intercourse with a minor must be reversed because insufficient evidence shows defendant specifically intended to have sexual intercourse, as opposed to engaging in other sexual activity, with a minor, and we agree.  In all other respects, we affirm the judgment.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

## II.  FACTUAL BACKGROUND

On October 15, 2011, San Bernardino police officers conducted a prostitution sting operation from an apartment complex in San Bernardino.  Using a Spanish language magazine called "Exclusiva," officers called the number for a business named "Pasion Spa," which featured a scantily clad woman, and which advertised a 30-minute massage for $60.  Based on the language and content of the advertisement for Pasion Spa, including the photograph of the scantily clad woman, police suspected the company was involved in prostitution services.  A male officer called Pasion Spa and asked for "full services," which he understood meant sexual services.  A woman arrived at the apartment approximately two and a half hours later, and she was arrested for prostitution.  This woman led police to her female pimp who was parked outside the apartment complex, and the pimp was arrested for pimping and pandering.

The pimp directed police to her cell phone, which was in her car, and police confirmed that her cell phone number was the same as the one listed on the Pasion Spa advertisement.  The pimp's cell phone, which had received over 15 missed calls, received a call around 6:21 p.m.  A female officer posed as the pimp and answered the call from a man who gave his name as "Alex."  Police later confirmed defendant was Alex.

Defendant asked whether any "very young girls" were available, and the officer confirmed that there were, even though no underage girls were actually involved or arrested during the sting operation.  Based on her training and experience, the officer understood "very young girls" to mean a juvenile.  Defendant advised the officer he had

3

an errand to run and would call back later. Approximately 20 minutes later, the pimp's telephone received four calls from defendant's number. The officer missed the first three calls but answered the last call, and defendant told the officer he had cancelled his errand. The officer then told defendant she had two girls available, a 16 year old and a nearly 18 year old, and she described what the girls looked like. She also gave defendant the address of the apartment and explained to him that it would be $200 per hour for one girl; defendant asked if there was a discount if he got both girls for 30 minutes each. During the conversation, defendant asked the officer if one of the girls was 18. The officer reiterated that the girls were 16 and almost 18, and defendant responded, "Oh. Okay. Well, alright." After the officer asked whether defendant would be coming to the apartment at that time, defendant asked: "Are you sure? Yeah, yeah. I want to be like over eighteen (unintelligible) understand your English but I'll be there." Defendant again asked, "Oh, okay. How old?," to which the officer responded, "Almost 18." Defendant again responded, "Oh, okay." Defendant never specifically asked for a girl under 18 years of age.

The officer then asked defendant, "What are you looking for," and defendant responded, "Well, I can't tell you on the phone because I don't like to get, you know, under eighteen so I don't know, I wanna, I see you." Defendant then asked the officer, "Are you affiliated with police or anything," which the officer denied. Defendant hung up the telephone after receiving directions to the apartment from the officer, but called five more times for additional directions. During one of these calls, the officer reminded

4

defendant that the girls were young, and asked defendant to be gentle with them. Defendant assured her that he would be gentle with the girls, and he mentioned he would bring extra cash for tips.

Defendant arrived at the apartment around 8:45 p.m. and was arrested after police officers confirmed he was the person who identified himself as Alex. Defendant was in possession of $963 in cash, as well as a cell phone, which police confirmed defendant had used to call the pimp's cell phone.

## III. DISCUSSION

A. *Defendant's Count 1 Conviction for Attempted Unlawful Sexual Intercourse With a Minor Must be Reversed Because Insufficient Evidence Supports It*

As noted, defendant was charged and convicted in count 1 of felony attempted unlawful sexual intercourse with a minor. (§§ 664, 261.5, subd. (c).) "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor." (§ 261.5, subd. (a).) Sexual intercourse is defined as "any penetration, no matter how slight, of the vagina or genitalia by the penis," and a minor is defined as "a person under the age of 18 years." (§ 261.5, subd. (a).) This crime can be charged as a felony, as it was here, if the victim is more than three years younger than the perpetrator. (§ 261.5, subd. (c).)

Defendant contends the People presented insufficient evidence that he committed attempted sexual intercourse with a minor, as the People did not present any evidence of defendant's age. (§ 261.5, subd. (c).) Defendant also asserts there was insufficient

evidence he "took a direct but ineffective step toward committing unlawful sexual intercourse with a minor." (§ 21a.)

The People acknowledge the evidence established defendant intended to engage in some form of lewd and lascivious conduct with minors, but they concede there was no evidence defendant specifically intended to engage in sexual intercourse, as opposed to engaging in another form of sexual activity with them, and for this reason the count 1 conviction must be reversed. We agree the People did not introduce any evidence that defendant specifically intended to have sexual intercourse with the minors, as opposed to engaging in other sexual activity with them. While it was possible defendant intended to have sexual intercourse with the minors, "a mere possibility is nothing more than speculation. Speculation is not substantial evidence." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851; see *People v. Perez* (1992) 2 Cal.4th 1117, 1133 ["""A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence"""].) Because the People failed to present evidence defendant went to the apartment with the specific intention of engaging in unlawful sexual intercourse with any minors, defendant's count 1 conviction for attempted unlawful sexual intercourse with a minor was not supported by substantial evidence and must therefore be reversed.

B. *Substantial Evidence Supports Defendant's Count 2 Conviction of Going to Meet With a Minor for Lewd Purposes*

Defendant contends there was insufficient evidence to support his count 2 conviction of going to meet with a minor for lewd purposes (§ 288.4, subd. (b)), which is committed if a person "goes to the arranged meeting place at or about the arranged time" in order to meet "with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior . . . ." (§ 288.4, subds. (a), (b).) For purposes of the statute, a minor is a person under the age of 18 (*People v. Yuksel* (2012) 207 Cal.App.4th 850, 855), and the jury was so instructed. Defendant argues that his conviction for violating section 288.4 cannot be sustained because there were no actual minors, or persons that defendant believed to be minors, that defendant arranged to meet with.

In assessing the sufficiency of the evidence, an appellate court reviews the entire record to determine whether it contains substantial evidence that is reasonable, credible, and of solid value, such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) We view the evidence in the light most favorable to the judgment, drawing all reasonable deductions in favor of the judgment. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) If the verdict is supported by substantial evidence, we must give "'"due deference to the trier of fact"'" and not retry the case. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We do not reweigh

7

the evidence; rather, we evaluate whether the evidence presented at trial and the reasonable inferences that could be derived from the evidence support the jury's conclusions. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Defendant claims a violation of section 288.4 requires that there be an actual minor, or minors, with whom he arranged to meet. This requires us to interpret section 288.4. "Our role in construing section [288.4], as with any statute, is to ascertain the Legislature's intent so as to effectuate the purpose of the law. We accomplish this task if possible by giving the words of the statute their usual, ordinary meanings. [Citation.]" (*In re Reeves* (2005) 35 Cal.4th 765, 770.) "If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*People v. Cole* (2006) 38 Cal.4th 964, 975.) In interpreting a statute, the ultimate goal is to "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.)

Here, the usual and ordinary meaning of the phrase "arranges a meeting with a minor or a person he or she believes to be a minor" in section 288.4 refers to the ultimate goal of meeting a minor to engage in lewd or lascivious behavior. (See *People v. Yuksel*, *supra*, 207 Cal.App.4th at p. 853 ["The statute targets an adult who . . . arranges a

8

sexually illicit meeting with a *minor*."].)  Contrary to defendant's argument, there is no requirement in section 288.4 that a minor be involved in arranging the meeting.  The plain meaning of section 288.4 also does not support defendant's interpretation that he cannot be convicted of section 288.4 if there were no actual minors that defendant arranged to meet.

Our interpretation of section 288.4 is bolstered by the legislative history of the statute.  "On November 7, 2006, the voters enacted Proposition 83, The Sexual Predator Punishment and Control Act:  Jessica's Law (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006); hereafter Proposition 83 or Jessica's Law).  Proposition 83 was a wide-ranging initiative intended to 'help Californians better protect themselves, their children, and their communities' (*id*., § 2, subd. (f)) from problems posed by sex offenders by 'strengthen[ing] and improv[ing] the laws that punish and control sexual offenders' (*id*., § 31)."  (*In re E.J.* (2010) 47 Cal.4th 1258, 1263)  Proposition 83 added new laws, including section 288.4.[2]

The stated purposes of section 288.4 include "provid[ing] a comprehensive, proactive approach to preventing the victimization of Californians by sex offenders," addressing "key flaws" in other bills "that inadvertently tie the hands of police in performing . . . sting operations," "mak[ing] all of California's communities safer from

---

[2]  The June 22, 2006 amended Senate Bill referred to section 288.3.  (Sen. Bill No. 1128 (2005-2006 Reg. Sess.) § 7, as amended June 22, 2006.)  In 2007, section 288.3 was renumbered as section 288.4.  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 172 (2007-2008 Reg. Sess.) as amended Sept. 7, 2007.)

all sexual predators, not just some," and authorizing police to use decoys to accomplish the statute's purpose. (Sen. Rules Com., Off. of Sen. Floor Analyses, 2d reading analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Aug. 22, 2006, p. 7.)

In this case, there is substantial evidence that defendant arranged to meet with minors, or with persons he believed to be minors, for the purpose of engaging in lewd and lascivious behavior. In speaking with the officer who posed as the pimp, defendant asked whether any "very young girls" were available. After police confirmed the only girls available were both minors, and rather than ending the conversation and rejecting the opportunity to meet with two minors, defendant asked for directions to the two minor girls' location, told the officer that he would be gentle with the girls, and brought $963 in cash to the apartment.

The sting operation furthered section 288.4's goal of providing broad protection of minors from sexual predators. On the other hand, defendant's proposed interpretation severely limits the protections under section 288.4, as it would exclude sting operations where, as here, no minors were actually involved in the operation. Such an interpretation would lead to absurd consequences, and would not further section 288.4's stated goal of providing "a comprehensive, proactive approach to preventing the victimization of Californians by sex offenders."

We conclude substantial evidence shows defendant arranged to meet with a minor, or with a person he believed to be a minor, and was therefore guilty as charged in count 2.

10

C. *The Evidence Did Not Establish Entrapment as a Matter of Law*

At trial, defendant relied on an entrapment defense.  Defendant now claims the judgment must be reversed because the record establishes he was entrapped by police as a matter of law.  We disagree.

"In California, the test for entrapment focuses on the police conduct and is objective.  Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense.  [Citation.]  '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully.  Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.'  [Citation.]" (*People v. Watson* (2000) 22 Cal.4th 220, 223, quoting *People v. Barraza* (1979) 23 Cal.3d 675, 689-690; *People v. Federico* (2011) 191 Cal.App.4th 1418, 1422.)

"'Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused.'  [Citation.]" (*People v. Moran* (1970) 1 Cal.3d 755, 760; see *People v. Lee* (1990) 219 Cal.App.3d 829, 836 ["An appellate court will only find entrapment as a matter of law where 'the evidence is so compelling and uncontradicted the jury could draw no other reasonable inference.'"].)

11

Substantial evidence shows that the criminal intent to meet with two minors for lewd purposes originated in defendant's mind, as it was defendant who initiated the call to Pasion Spa and asked for "very young girls." Although defendant never specifically asked for a minor, and even specifically asked about an 18 year old, he also did not object when the female officer, posing as the pimp, advised him that the two available girls were minors. Instead, after being told both girls were minors, he negotiated a price for the two girls and promised to be gentle with them. He also repeatedly called the number for Pasion Spa to obtain additional directions to the apartment, where he was arrested with $963 in cash. The police running the sting operation did not induce defendant to commit the offense; rather, they merely offered defendant the opportunity to act unlawfully. Based on this evidence, we conclude defendant was not entrapped by the police as a matter of law.

D. *The Trial Court Was Not Required to Give the Jury a Unanimity Instruction Sua Sponte on Count 2*

Defendant argues the trial court erroneously failed to instruct the jury that it had to unanimously decide which minor defendant attempted to meet in count 2, to wit, the 16 year old or the almost 18 year old. The trial court was under no obligation to give such a unanimity instruction sua sponte. The conviction was proper because the evidence shows defendant intended to meet with one or both of the minors.

A "unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or

12

acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*People v. Russo* (2001) 25 Cal.4th 1124, 1135.) A unanimity instruction is not required where, as here, the defendant is charged with one crime based on one act that affected two victims, and where there is no evidence the defendant committed the crime as to one victim but not the other. (*People v. Carrera* (1989) 49 Cal.3d 291, 311-312 [one robbery charge involving two victims]; see *People v. Jennings* (2010) 50 Cal.4th 616, 679.)

Defendant was charged and convicted in count 2 of one crime—going to meet with a minor for lewd purposes. The evidence shows defendant made an arrangement with the female officer, who was posing as the pimp, to meet either, or both, of the two minor girls. Because defendant committed one crime, and because there was no evidence defendant committed the crime as to one potential victim but not the other, the trial court was not required to give the jury a unanimity instruction sua sponte, as there was no "risk the jury may divide on two discrete crimes and not agree on any particular crime." (*People v. Russo*, *supra*, 25 Cal.4th at p. 1135.)

E. *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Defendant's Prior Sexual Offense*

Lastly, defendant asserts the trial court erred in admitting evidence of defendant's prior uncharged sexual offense involving a minor, as such evidence was inadmissible to prove defendant's conduct on October 15, 2011, particularly where his count 2 conduct was dissimilar from his prior sexual offense. The trial court did not err in admitting evidence of defendant's prior sexual offense.

1. Background—Evidence of Defendant's Prior Uncharged Sex Offense

On June 24, 2014, the People filed a brief seeking to introduce the testimony of a woman who claimed defendant molested her in 2007, when she was 15 years old. The People sought to introduce this evidence pursuant to Evidence Code section 1108, which provides, in pertinent part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) Defendant moved in limine to exclude this evidence pursuant to Evidence Code section 352, but the court ruled the evidence would be admissible pursuant to Evidence Code section 1101, subdivision (b), given the similarities between both offenses, including defendant's attempts to pay for sex in both situations.

At trial, the victim of the prior sex offense testified she was 15 years old in May 2007. At 7:15 p.m. one evening in May, she was ordering food at a fast food restaurant a

14

few blocks from her parents' business. Defendant approached her and asked whether she was a street walker, which she interpreted as defendant asking her if she was a prostitute. When she said no, he asked whether she would be interested in being a model, and told her that he had more information in his car. Defendant asked if she had a driver's license, and she advised him she was only 15 years of age. She got into defendant's car, where he showed her hundreds of dollars in cash. He drove the victim down a small street behind the restaurant and stopped about a block away from the restaurant. He then asked her whether she had any hair on her body, and she lifted her shirt to show him that she did not have any hair on her stomach. He then put his hand up the victim's shirt, touching her breasts, before she told him to stop. He stopped, apologized, and then gave her $50 for making her feel uncomfortable. He asked whether she had a boyfriend, which she denied. He then smiled at her, told her he was horny, and then reached down her pants, touching the top of her vagina. She told him that she was uncomfortable, got out of the car, went to her parents' business, and reported the incident to the police. Her parents took her to the emergency room to be examined, and she gave the $50 to the police.[3]

The trial court instructed the jury that the People presented evidence that defendant committed the crime of a lewd act with a child between the ages of 14 and 15

---

[3] Defendant was charged with a sex offense involving the 15-year-old victim, but he ultimately pled guilty to assault with a deadly weapon other than a firearm. (§ 245, subd. (a)(1).) It is unclear from the record the basis for defendant ultimately pleading guilty to this charge.

years old that was not charged in the present case.  (§ 288, subd. (c)(1).)  The trial court further instructed that, if the People met their burden of showing defendant committed the uncharged offense, the jury could, but was not required to, conclude defendant was disposed or inclined to commit sexual offenses based on his commission of the prior uncharged sex offense.  The jury was also instructed that it could not convict defendant of either count based solely on his commission of the prior sexual offense, and that the purpose of this evidence was "for the limited purpose of determining the defendant's intent, plan, and knowledge."

2.  Standard of Review

A trial court's decision to admit evidence pursuant to Evidence Code section 1101 or 1108 is reviewed for abuse of discretion.  (*People v. Leon* (2015) 61 Cal.4th 569, 597 [Evid. Code, § 1101, subd. (b)]; *People v. Merriman* (2014) 60 Cal.4th 1, 58 [Evid. Code, § 1108].)  A court does not abuse its discretion in admitting evidence of other sexual acts unless its ruling "'"'falls outside the bounds of reason'"'" and "[w]e will only disturb a trial court's ruling under Evidence Code section 352 where the court has exercised its discretion in a manner that has resulted in a miscarriage of justice.  [Citation.]"  (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1098.)

3.  Analysis

Evidence Code section 1101, subdivision (a), prohibits "evidence of a person's character or a trait of his or her character . . . when offered to prove his or her conduct on a specified occasion."  However, under subdivision (b) of Evidence Code section 1101,

"evidence that a person committed a crime" may be admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . .)" And, as noted, pursuant to Evidence Code section 1108, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).)

If a prior sexual offense is similar in nature to the charged offense, the similarity of the offenses is central to the trial court's "evaluation of whether the evidence tended to prove motive, intent, a common design, defendant's identity as the perpetrator, or the victim's lack of consent, under Evidence Code section 1101. [Citations.] In addition, the degree of similarity is relevant to the evaluation of whether the probative value of the evidence outweighs its prejudicial effect under Evidence Code section 1108. [Citation.]" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1285.) "[T]he clear purpose of [Evidence Code] section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses," and "[w]hether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1164.)

Defendant argues that the prior sexual offense and the current charged offenses were dissimilar because, in the prior sexual offense, he "allegedly took the initiative to approach [the 15-year-old victim] and take her away," while, here, he only called a

17

massage establishment and attempted to procure a girl who was at least 18 years of age. We reject defendant's argument, as, in both incidents, defendant attempted to pay a minor and sought to engage the minor in some form of lewd or lascivious behavior, even if he utilized different methods to achieve this objective. As noted, in the prior uncharged sexual offense, he touched a 15-year-old's breasts, told her he was horny, and touched the top of her vagina. He also gave her $50 because he had made her feel uncomfortable. Here, defendant called Pasion Spa and asked for "very young girls," agreed to meet the two girls even after being told they were both minors, promised he would be gentle with the girls, and arrived at the apartment with $963 in cash. Based on the similarity of defendant's attempts to pay a minor to engage in lewd and lascivious behavior, the prior sexual offense was admissible under Evidence Code section 1101, subdivision (b) to show defendant had the motive, intent, plan or knowledge of meeting with the two minors and paying them to engage in lewd or lascivious behavior.

Furthermore, the degree of similarity between the two incidents is relevant to the issue of whether evidence of the prior sexual offense was admissible under Evidence Code section 1108, subdivision (a). As in *Miramontes*, the two incidents were not unduly remote in time, as defendant committed the prior sexual offense in 2007 and the current one in 2011. (*People v. Miramontes*, *supra*, 189 Cal.App.4th at p. 1102 [four-year passage of time did not make prior sexual offense unduly remote or dissimilar from charged offense].) In both incidents, defendant attempted to engage teenagers in lewd and lascivious behavior. Additionally, the trial court instructed the jury that they could

18

consider the prior sexual offense evidence only if the People proved by a preponderance of the evidence that the prior sexual offense occurred, and only to determine defendant's intent, plan and knowledge in committing the charged offenses. In doing so, the trial court ensured that the jury did not confuse the issues, and was not misled to convict defendant based solely on evidence of the prior sexual offense.

On this record, we conclude the trial court's admission of defendant's prior sexual offenses did not """"fall[] outside the bounds of reason."""" (*People v. Miramontes*, *supra*, 189 Cal.App.4th at p. 1098.) Thus, the trial court did not abuse its discretion when it admitted evidence of defendant's prior uncharged sexual offenses, whether under Evidence Code section 1101, subdivision (b), or Evidence Code section 1108, subdivision (a).

F. *The Trial Court Did Not Commit Cumulative Error*

Defendant argues the combined effect of the trial errors violated his right to due process of law, thus requiring a reversal of the entire judgment. Although we agree that defendant's count 1 conviction for attempted unlawful sexual intercourse with a minor was not supported by substantial evidence, we have rejected the remainder of defendant's claims of error. Hence, there is no cumulative error. (*People v. Cook* (2006) 39 Cal.4th 566, 608; see *People v. Tully* (2012) 54 Cal.4th 952, 1061 [rejecting claim of cumulative error based on forfeiture and on the merits].)

19

# IV.  DISPOSITION

Defendant's conviction for attempted unlawful sexual intercourse with a minor in count 1 is reversed, and the case is remanded to the trial court for resentencing.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.