Filed 12/31/24  P. v. Ruiz CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B328859 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA156354) |
| v. | |
| RAMON VILLALOBOS RUIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Okabe and Haushalter and Mark J. Haushalter; Kravis, Graham & Zucker and Bruce Zucker, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General for Plaintiff and Respondent.

# I.     INTRODUCTION

Following trial, a jury convicted defendant Ramon Villalobos Ruiz of three counts of oral copulation or sexual penetration with a child 10 years of age or younger (Pen. Code[1], § 288.7, subd. (b)), three counts of lewd acts upon a child (§ 288, subd. (a)), and two counts of sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a)).

On appeal, defendant contends the trial court erred by permitting defendant's niece to testify about uncharged sex offenses.  He also contends the court erred when it excluded the testimony of two witnesses who would have testified about the victim's school disciplinary records.  Finally, defendant asserts it was error to overrule his objection to the prosecutor's statement during closing argument on the grounds that it was improper vouching.  We affirm.

# II.     BACKGROUND

## A.     *Procedural History*

On August 8, 2022, the Los Angeles County District Attorney (District Attorney) filed an amended information charging defendant with eight counts of sexually abusing defendant's granddaughter, L.V.  On October 21, 2022, a jury found defendant guilty of all eight counts.  On February 17, 2023, the trial court sentenced defendant to an aggregate term of 40 years to life.

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

B.  *Trial*

    1.  Prosecutor's Case

        a.  L.V.

L.V. was 17 years old in October 2022, when she testified at trial. When L.V. was five or six years old, she spent Sundays as well as after school on certain other days, at her grandparents' house. Defendant first molested L.V. by touching her vagina while her pants were off. On another occasion, defendant partially removed L.V.'s clothing and licked and touched L.V.'s vagina. On more than five, and possibly as many as 20, occasions, defendant digitally penetrated L.V.'s vagina. Defendant also orally copulated L.V. on more than five occasions.

Defendant forced L.V. to touch his penis. On one occasion, while the two were in defendant's bedroom, defendant forced his penis into L.V.'s mouth. On another occasion, defendant put lotion on his penis and made L.V. touch him until he ejaculated. On at least one occasion, defendant rubbed his penis on L.V.'s vagina and told her that "he wasn't going to put it in [her] until [she] was older." And, when L.V. was seven years old, defendant rubbed his penis against L.V.'s vagina.

L.V. recalled multiple other instances when defendant abused L.V. while the two were outside the home. On one occasion, when L.V. and defendant were in a parked car near a restaurant a few minutes away from his home, defendant forced L.V. to touch his penis, which L.V. described as "hard." On another occasion, defendant drove L.V. to a bank to collect a paycheck; and, while the two were inside defendant's car, he

3

forced her to "play[ ] with his penis." L.V. also recalled "playing with [defendant's] penis" before picking up her grandmother from a hair salon.

L.V. did not tell anyone about the abuse while it was occurring because she did not think that anyone would believe her. L.V. finally told a friend about the abuse in July 2021. She then told her parents, who placed her in therapy. The therapist reported the abuse to the police.

### b. D.Q.

Defendant's niece, D.Q., was 23 years old at the time of her testimony. When D.Q. was nine years old, defendant and his wife stayed at D.Q.'s home in Mexico for approximately three months. During that stay, defendant asked D.Q. and her three-year-old sister if they knew about penises. On one occasion, defendant drove D.Q. and her sister to a location away from the home, and tried to pull down D.Q.'s pants to touch her "private parts." She initially resisted but while D.Q. was in the truck bed, defendant pulled down D.Q.'s pants and used his fingers to touch D.Q.'s vagina. Defendant then attempted to touch her again. D.Q. told defendant that she would tell her father about the incident. She then took her sister into the vehicle and locked the door. Eventually, D.Q. unlocked the door and defendant drove them home.

On another occasion, while outside the home, defendant put his hands inside D.Q.'s pants from behind and touched her butt and vagina. D.Q. ran to her mother's room, but did not tell her about what happened.

4

D.Q. only revealed the abuse after learning from her mother about defendant's abuse of L.V.

### 2.    Defense Case

Defendant's wife, Andrea Villalobos, testified that she did not believe the sexual abuse occurred.  During the period when defendant allegedly abused L.V., he worked full time in construction from 4:45 a.m. to 6 p.m., and L.V. would have left with her mother by the time defendant arrived home.  On cross-examination, Villalobos agreed that people who molest children typically do not do so in front of other people.

Defendant testified and denied all the sexual abuse allegations.  Defendant explained that he had been unable to have an erection or engage in sex with his wife since 2008, that is, before the time he was alleged to have abused L.V. and D.Q.

## III.   DISCUSSION

### A.    *Testimony Regarding Uncharged Sex Offenses*

Defendant contends the trial court erred by admitting D.Q.'s testimony under Evidence Code section 1108, instead of excluding it pursuant to Evidence Code section 352.  "On appeal, we review the admission of other acts or crimes evidence under Evidence Code section 1108 for an abuse of the trial court's discretion.  [Citation.]  The determination as to whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is 'entrusted to the sound discretion of the

trial judge who is in the best position to evaluate the evidence.' [Citation.]" (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1097.)

### 1. Procedural Background

On July 19, 2022, the prosecution filed a motion in limine to admit evidence of defendant's prior sexual abuse of D.Q. under Evidence Code section 1108. That same day, defendant filed a motion to exclude D.Q.'s testimony pursuant to Evidence Code section 352. Following argument, the trial court, having "considered the nature, relevance, and possible remoteness" of D.Q.'s testimony, ruled that the testimony was admissible.

### 2. Analysis

"Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type, and essentially allowing such evidence to be used in determining whether the defendant is guilty of the current sexual offense charge. (Evid. Code, § 1108, subd. (a).) Before Evidence Code section 1108 was enacted, prior bad acts were inadmissible when their sole relevance was to prove a defendant's propensity to engage in criminal conduct (see Evid. Code, § 1101; [*People v. Falsetta* (1999)] 21 Cal.4th 903, 911, 913). However, the enactment of Evidence Code section 1108 created a statutory exception to the rule against the use of propensity evidence, allowing admission of evidence of other sexual offenses in cases charging such conduct, for proof of the

6

defendant's disposition to commit the charged offense. ([*People v. ]Falsetta, supra*, [21 Cal.4th] at p. 911.) The California Supreme Court has ruled that Evidence Code section 1108 is constitutional. ([*People v. ]Falsetta, supra*, [21 Cal.4th] at pp. 916–922.)" (*People v. Miramontes, supra*, 189 Cal.App.4th at pp. 1096–1097, fn. omitted.)

"[F]ive factors stand out as particularly significant in an Evidence Code section 1108 case. These factors are (1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time. [Citation.] A trial court balances this first factor, i.e., the propensity evidence's probative value, against the evidence's prejudicial and time-consuming effects, as measured by the second through fifth factors. (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)" (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.)

D.Q.'s testimony about the uncharged offenses described conduct similar to the charged offenses. D.Q. and L.V. were both related to defendant and under 10 years of age when defendant abused them. Further, on at least some of the occasions, defendant drove his young victims to an isolated location in order to perpetrate his abuse. Finally, defendant committed his crimes

7

outside the presence of any adults. Thus, the first factor supports the admission of D.Q.'s testimony.

As to the second factor, the uncharged conduct was less severe than the charged crimes. D.Q. described only two incidents of abuse, while L.V. described defendant's commission of up to 20 sexual acts over several years. It therefore was unlikely the jury would seek to punish defendant for the uncharged acts, but not the charged acts, and the fourth factor also supported admission of the testimony. (See *People v. Hernandez* (2011) 200 Cal.App.4th 953, 969 [finding no indication in record that jury punished defendant for prior offenses; "the impact of the prior offenses was no more egregious than the charged offense which was supported by [the victim's] testimony"].)

As to the third factor, L.V. testified about defendant's conduct from approximately 2010 to 2014. D.Q. testified to conduct occurring in approximately 2008, which is close in time to the charged crimes.

Finally, for the fifth factor, there was no undue consumption of time for D.Q.'s testimony, which comprised approximately 67 pages of the reporter's transcript including direct and cross-examination, while L.V.'s testimony was approximately 181 pages. Accordingly, we find the trial court did not abuse its discretion by admitting D.Q.'s testimony of defendant's prior sexual misconduct.[2]

_____

[2] Defendant contends that, because the court abused its discretion by admitting D.Q.'s testimony, the admission of evidence of the uncharged crimes is unconstitutional. Defendant also argues that admission of D.Q.'s testimony rendered his trial "fundamentally unfair" in violation of due process. We reject the

8

B.    *Exclusion of Character Evidence*

Defendant next contends the trial court erred by excluding the testimony of Trevor Nottingham and Lydia Sandecki, two of L.V.'s former high school teachers.  "We review the trial court's rulings regarding the admissibility of the evidence for an abuse of discretion.  [Citation.]  A trial court's decision to admit or exclude evidence ""'will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.'""  [Citations.]  'This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law.  We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.'  [Citation.]"  (*People v. Mataele* (2022) 13 Cal.5th 372, 413–414.)

    1.    Procedural Background

Prior to trial, defense counsel moved to admit testimony from Sandecki and Nottingham about statements they wrote in L.V.'s school records in 2018 and 2019.[3]  The six pages of school records at issue included four pages of L.V.'s discipline record,

argument.  (*People v. Falsetta, supra*, 21 Cal.4th at p. 915 [finding no undue unfairness "in light of the substantial protections afforded to defendants in all cases to which [Evidence Code] section 1108 applies"].)

[3]    The school records are not in the record on appeal.  We summarize the contents of the records as described by the parties during the trial proceedings.

9

one page of her student grade report, and one page of a transcript of her grades.  In 2018, Nottingham wrote that L.V. had "'little respect for education and made false statements'" and "'made untrue excuses.  Her class disruptions led to her removal by school security.'"  In 2019, Sandecki wrote that L.V. was someone who would say "'whatever [that] would get her what she wanted. [She] . . . never gave a straight answer.'"  Sandecki also wrote that, on May 28, 2019, L.V. and another student were "'constantly hitting each other . . . .'"  On May 30, 2019, Sandecki noted that L.V. had lied about why she had paint all over her face.  The school disciplinary record labeled these disruptions as "horse play."  Defense counsel explained that he subpoenaed the two teachers to testify as to L.V.'s credibility.

The prosecution moved to exclude the witnesses' testimony. The prosecutor cited to an e-mail exchange between defense counsel and Sandecki, in which Sandecki responded to defense counsel's request to testify at trial.[4]  Sandecki explained: "'I couldn't find the yearbooks.  But I think I remember her.  Is she tall, slender, pretty with very long dark hair?  I don't remember the incidents mentioned.  But I do remember that group.  And [L.V.] was the . . . "leader."  She had no respect.  Did what she wanted and said whatever [that] would get her what she wanted. Never gave me a straight answer.'"  Defense counsel responded by thanking Sandecki for "looking up [L.V.] in the yearbooks" and asking that she testify at trial.  Sandecki wrote a follow-up e-mail, stating that she would not be testifying because she did not want to drive to Los Angeles.  Sandecki wrote another e-mail, stating:  "I don't remember any of my past students or what I

_____

[4]     The contents of the e-mails are as described in the reporter's transcript.

10

wrote about them. Please reread my previous e-mail. I did not find the yearbooks. And you never replied to my vague description. So I still can't confirm who we are talking about. I'm not willing to drive to L.A. I am not too willing to testify in any court about someone I wouldn't recognize. I had over 200 students a day. And that has to be over four years ago since I've been retired for three and a half years." The prosecutor also noted Nottingham's statement that "he didn't particularly remember this student."

The trial court excluded Sandecki and Nottingham's proffered testimony pursuant to Evidence Code section 352. The court determined that evidence of L.V.'s violence and disruptive acts "d[id] not go" to her credibility. The court also concluded the probative value of the teachers' testimony regarding L.V.'s disciplinary record was low and outweighed by the substantial danger of confusion of issues and misleading the jurors. Finally, the court found the testimony would result in an unnecessary waste of time, citing Sandecki's statement that she did not remember L.V.

2.      Analysis

Defendant argues the trial court abused its discretion by excluding the teachers' testimony. "A witness may be impeached with evidence of a prior conviction or other conduct involving dishonesty or otherwise demonstrating moral turpitude, subject to the trial court's exercise of discretion under Evidence Code section 352. [Citations.] [Evidence Code s]ection 352 permits courts to limit such evidence if its probative value is substantially outweighed by the probability that it will consume undue time or

11

create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. [Citation.]" (*People v. Wilson* (2024) 16 Cal.5th 874, 912.) We find no abuse of discretion.

"'[T]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' [Citations.] When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify. [Citations.] Additional considerations apply when the proffered impeachment evidence is misconduct other than a prior conviction. This is because such misconduct generally is less probative of immoral character or dishonesty and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude. [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 931–932.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*Id.* at p. 932.)

Here, the trial court acted within its discretion by excluding testimony about L.V.'s school disciplinary record.[5] The

---

[5]     We will assume for purposes of our analysis that Sandecki and Nottingham's statements in the school records would be

12

proffered impeachment evidence involved misconduct other than a prior conviction, and thus is generally less probative of a witness's honesty.  The court could reasonably conclude that school horseplay was not probative of L.V.'s veracity.  The court could also reasonably conclude that school records indicating that L.V. gave false statements and would not give straight answers in 2018 and 2019, years before L.V. reported defendant's abuse and testified at trial, were only mildly probative of L.V.'s honesty at trial.  Indeed, the probative value of the earlier descriptions was relatively weak given that neither teacher was able to specifically recall L.V.  Thus, it was unlikely the witnesses could recall the basis for their earlier statements.  ""[T]he latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.  The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." [Citation.]' [Citations.]" (*People v. Harris* (2008) 43 Cal.4th 1269, 1291.)  On these facts, we conclude the court did not err in excluding the proffered testimony.

C.  *Prosecutor's Statements During Closing Argument*

Finally, defendant contends the trial court erred by overruling his objection to a portion of the prosecutor's closing argument that purportedly bolstered L.V.'s testimony.  "We review the trial court's rulings on prosecutorial misconduct for abuse of discretion.  [Citation.]" (*People v. Peoples* (2016) 62 Cal.4th 718, 792–793.)

---

admissible as a past recollection recorded, an exception to the hearsay rule.  (Evid. Code, § 1237.)

### 1. Background

During closing argument, the prosecutor stated: "Now, these sorts of acts that the defendant is charged with, I think most reasonable people would say that there wouldn't be other witnesses. Most people who commit these kinds of crimes do not do it in the open in front of other witnesses." Defense counsel objected, stating: "Objection. No evidence of that." The trial court overruled the objection, and then informed the jurors: "I do want to remind the jurors, as I instructed, that you must rely on your recollection of the evidence. That the attorneys' arguments are their own presentation or recollection of evidence. So ultimately it's your recollection of the evidence that you must rely on, not counsels' arguments."

### 2. Analysis

"'Impermissible vouching occurs when "prosecutors [seek] to bolster their case 'by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office, in support of it.' [Citation.] Similarly, it is misconduct 'to suggest that evidence available to the government, but not before the jury, corroborates the testimony of a witness.'" [Citations.]' [Citation.]" (*People v. Mendoza* (2016) 62 Cal.4th 856, 906.) The trial court did not err by overruling defendant's objection. No impermissible vouching occurred. The prosecutor did not suggest that evidence available to the prosecution, but not the jury, corroborated L.V.'s testimony. Rather, the prosecutor cited to common knowledge, which was corroborated by defendant's witness Villalobos, that perpetrators of sexual abuse

14

of a minor generally commit these acts outside the presence of other adults.  "Counsel may 'draw from matters that are """"not in evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature.'"""" [Citation.]"  (*People v. Rodriguez* (2020) 9 Cal.5th 474, 481.)

Moreover, any assumed error was harmless.  The trial court admonished the jury that arguments are not evidence, and "absent some indication to the contrary, we assume a jury will abide by a trial court's admonitions and instructions."  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1336.)  Accordingly, we find no reversible error.

## IV.   DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


           KIM (D.), J.


We concur:



  BAKER, Acting P. J.



  MOOR, J.

16